Fanny Springsteen, Administratrix, and Simon C. Springsteen, Administrator, &c., Respondents, *v.* Henry A. Samson and Susan M. H. Springsteen, Administrators, &c., Appellants.

Where the language of an instrument is ambiguous and susceptible of more than one construction, that construction will be adopted which, in the light of surrounding circumstances, and upon a view of the whole instrument, is in accordance with the apparent intent of the parties.

Under this rule the words "all lawful debts, dues, demands and claims now due, or to grow due hereafter, from said John J. Springsteen," interpreted to mean "from the estate of John J. Springsteen, deceased."

*Held,* That the term "debts, dues, demands and claims now due or to grow due hereafter, etc.," included legal costs and charges against the estate afterwards incurred in the settlement of said estate.

Potter, J. The only question in this case, in my opinion, is: Whether the judge on the trial gave the true construction to the condition of the bond given by Simon Springsteen to the defendants. If, in view of all the circumstances of the case, the true interpretation of that condition was given, the judgment should be affirmed, otherwise it should be reversed.

In the terms used in that condition, it cannot be literally construed. They require the aid of the acts done, and other acts the doing of which are contemplated, and this condition of the bond, and the due and proper interpretation of its meaning, present a case in which the courts are permitted to call in the aid of extrinsic circumstances to determine its true meaning. (*French* v. *Carhart,* 1 Comst., 102, and cases cited.) If the language of an instrument is susceptible of more than one construction, the intent may be inquired into. This is the established rule at common law, and in contracts relating to an interest in lands it is made so by an express provision of the statute. (1 R. S., 748.)

Let us briefly refer to the surrounding circumstances at the time of the execution of this bond, and at the things contemplated between the parties, and in the light of those circumstances read this bond.

John J. Springsteen died in December, 1858, without issue, but leaving Susan M. H. Springsteen, his wife, and Simon Springsteen, his father, entitled in equal shares to his estate.

The widow, Susan H. M., and Henry H. Samson, the defendants, administered on the estate.

On the 28th of January, 1859, the father and the widow of deceased agreed, by the assistance of two friends, called arbitrators, upon a division of the estate between themselves, and stipulating that *all legal claims against the estate* should be paid equally by the said Susan and the said Simon, thus intending to hasten the division and save legal expenses. The agreement, subscribed by both these equal inheritors of this estate, after the determining the division which should be made, was in the following language: "It shall be, and hereby is, agreed, however, that all legal claims against said estate shall be paid equally by the heirs, Susan Matilda H. and Simon." This agreement, while it was but the expression of what the legal equities of these parties would have been without it, was made on the division of the estate between them, in which division Simon took the real estate, and Susan her share from the personal. And, as at that early day, the actual extent of claims against the estate could not be determined, it was proper, when releasing each other's interests in the property thus divided, to have something in writing to secure each from the other against future liabilities. And as the plaintiff alleges in his complaint, which, not being denied in the answer, is admitted, "that afterwards, on or about the 24th day of March, 1859, in consideration of the division of the proceeds and effects of said estate theretofore made as aforesaid, and in order to carry into effect said division, *and fully and amply indemnify and save harmless* the said administrator and administratrix, and said estate, from and against the payment of the equal one-half of all the debts, dues, demands and claims, then due or to grow due thereafter, from John J. Springsteen, the said bond and mortgage was executed." The condition of this bond, made to the administrators of this estate, is to be read in relation to, and in the light of, these circumstances, and is in the following words:

"If the above bounden Simon Springsteen, his heirs, exe-
cutors or administrators, shall, and do well and truly pay or
cause to be paid, unto the above named obligees, their certain
attorneys, executors or assigns, the equal half part of any
and all lawful debts, dues, demands and claims now due, or to
grow due hereafter, from the said John Springsteen, and fully
and amply indemnify and save harmless the said adminis-
trator and administratrix, *and estate*, from and against the
payment of the equal one-half part of all such debts, dues,
demands and claims, without fraud or delay, then the pre-
ceding obligation is to be void, otherwise of force."

In August, 1860, this administratrix and administrator
had a final accounting as administrators upon the said estate
before the surrogate of Tioga county, and upon that account-
ing there was found due to the defendants, as such admin-
istrators, from the said estate, the sum of $673.97. This
sum included expenses, surrogate's fees, monument for the
deceased, intestate, and commissions upon the estate to the
administrators. The debts remaining unpaid from the estate
to creditors was $20, and Simon Springsteen had paid of
debts, after giving said bond, $175, and had taken an assign-
ment of that demand to himself.

These administrators claim that Simon Springsteen was
liable to pay his equal half of this decree of $673.97 against
the estate of John J. Springsteen, and the $20, subject to a
reduction by one-half of the amount of $175, which he had
paid of said debts.

The judge at the trial found that Simon Springsteen was
only bound to pay according to the terms of the condition of·
his bond, and that the condition did not cover the expenses
of administration. This presents the whole case.

1. There would be no difficulty in holding, that, without
this bond, equity and justice demands that the expenses of
administration should be equally borne by those who equally
divided, received and enjoyed the estate.

2. It is also clear, beyond dispute, that the written agreement
of the 28th of January, 1859, which precedes this bond,
binds each party to it, to bear equally all legal claims against

the estate of John J. Springsteen. It cannot well be disputed that the expenses of administration is a claim against that estate.

3. It is equally clear, in my opinion, that the bond and mortgage in question were given by Simon Springsteen to secure the performance of his part of that agreement of the 28th of January, 1859.

4. It cannot be denied that the condition of this bond is without force, if literally interpreted, and that of necessity it must have a practical and sensible construction in order to give it any force. John J. Springsteen being dead, cannot technically or literally be said now to owe debts, and no debts can hereafter become due against him. What then does such language, in the condition of this bond, mean? It requires, I think, but the commonest and most ordinary understanding to comprehend that it is the *estate* of John J. Springsteen to which this language refers, as owing debts, and against which debts may become due; and so understood, the case is free from all doubt.

It is conceded to be a sound rule in the construction of contracts, that where the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language, and courts are not at liberty to look at extrinsic circumstances surrounding the transaction, or elsewhere, for reasons to ascertain its intent; the understanding of the parties must be deemed to be that which their own written agreement declares. (*Rodgers* v. *Kneeland*, 10 Wend., 218.) Where a literal performance is impossible or impracticable, or where the language is ambiguous or susceptible of more than one construction, or is vague, or general, or inappropriate to express the true intent, extraneous evidence is admissible to explain, and an antecedent parol agreement may be received to point to the intent of the parties. This was so held in *Blossom* v. *Griffin* (13 N. Y., 573; see also 1 Greenl. Ev., § 288); *Livingston* v. *Ten Broeck* (16 Johns., 14).

In the case of *Decker* v. *Furniss* (14 N. Y. 615), COMSTOCK, J., in giving the opinion of the court as to the construction of an agreement, upon the point whether it was an

executed or an executory contract, says : " There is no doubt that the phrase which stands at the commencement of the contract, ' William H. Brown sells,' &c., imports in itself an executed sale.   But the books furnish abundant evidence that phrases of this kind are used in a very loose sense, and that their literal signification is often overruled by the tenor and purpose of the whole instrument."   In *Hasbrook* v. *Paddock* (1 Barb., 637, 638), Gridley, J., said : " In the interpretation of a contract for the purpose of ascertaining the intention of the parties to it, it is allowable to resort to extrinsic circumstances which surround the transaction, and thus to place ourselves in the situation of the contracting parties whose language we are called upon to construe."   (See also the various cases collected in 2 Cow. & Hill, n. 957, p. 1399.)   Adopting these rules as sound law, the obvious and reasonable meaning of the phrase, " all lawful debts, dues, demands and claims now due, or to grow due hereafter, from said John J. Springsteen," followed by the agreement to " fully and amply indemnify and save harmless the said administrators and estate," and explained by the agreement of the 28th January, 1859, " that all legal claims against said estate shall be paid equally by the said heirs," is, that it was the debts of the estate of John J. Springsteen that was to be paid, and that each of said heirs should pay an equal proportion of such debts.

The result of this view of the law is, that the judge at the circuit erred in his conclusion that the condition of this bond was limited in its meaning to debts actually contracted by the intestate, and then due, or thereafter to become due.   To arrive at this conclusion, it became even necessary to hold its meaning to be the debts of the *estate* of John J. Springsteen, *deceased*, thus interpolating into the condition in effect, and as a necessity, the words " estate " and " deceased," in which, I think, he was clearly justified; but having exercised this justifiable power of making it refer to the estate of John J. Springsteen, deceased, how he could limit it so as to include one class of debts against the estate only, and exclude another, is not so clearly seen to be just.

When the court below found it necessary to add words to this condition in order to give it force and effect, which was

doubtless correct, it should then have been interpreted for all other just and equitable purposes between the parties as though the words so interpolated had been written in the condition. This was not done, and obvious injustice is the result. For these reasons I am for reversing the judgment, and ordering a new trial, with costs to abide the result.

DENIO, Ch. J., dissenting. Appeal from a judgment of the Supreme Court. The action was brought by Simon Springsteen, deceased, in his lifetime; and he dying after issue joined and before the trial, it was revived in the name of the plaintiffs, who are his personal representatives. The object of the action was to enjoin the defendants from proceeding to sell certain mortgaged premises under a foreclosure by advertisement which the defendants had caused to be published according to the statute, and to have the mortgage discharged of record.

The mortgage was executed by the plaintiff, Simon Springsteen, to the defendants, in their characters of administrator and administratrix of John J. Springsteen, deceased, and it bore date the 24th March, 1859. The clause of defeasance was in these words: "This grant is intended as a security for the payment of the equal half part of all lawful debts, dues, demands and claims now due or to grow due hereafter from the said John J. Springsteen, and fully and amply indemnify and save harmless said administrator and administratrix and estate from and against the payment of the equal one-half part of all such debts, dues, demands and claims, according to the condition of a bond this day executed," &c. The mortgage contained the usual power of sale. The bond referred to was a common penal bond in the penalty of $1,500, with a condition in the same language as the foregoing clause of defeasance.

The advertisement of foreclosure signed by the defendants was dated August 8, 1863, and was for a sale to take place on the first day of November following. It claimed that there was due on the mortgage the sum of $453.07. The plaintiff's ground of relief was that nothing was due on the bond and mortgage. The following facts appeared and were

found as conclusions of fact on a trial before a justice, without a jury.

John J. Springsteen, whose representatives the defendants were, died the 28th December, 1858, intestate and without descendants, leaving the plaintiff, his father, and the defendant, Susan M. H. Springsteen, his widow; and they were the only persons entitled to an interest in the succession to his estate. He died seized and possessed of a valuable real and personal estate. The defendants took out their letters of administration on the 12th January, 1859, and soon after paid off all the debts of the deceased, so far as they were known, and caused an inventory and appraisal of the estate to be made. On the 28th of the same month of January, the plaintiff and the defendant Susan M. H. Springsteen, with the assent of the defendant Samson, entered into an agreement for the division between them of the property of the deceased. The justice finds this to have been done with a view to prevent delay and expense, and for their supposed mutual benefit. They chose referees to assist in the division, and an instrument in writing was drawn up containing the agreement, which is therein stated to have been proposed by the referee, and agreed to by the father and widow of the deceased, and which is signed by them. By this paper an amount of $16,566.99, in stocks, securities for money and cash selected from the inventory, and of which a schedule is contained in the instrument, is set off to the widow, Susan M. H. Springsteen, to be received by her at her own risk of collection in full of her interest in the estate; and it is agreed that all other assets, whether real or personal, and whether contained in the inventory or not, be awarded to and received by the father, Simon Springsteen, in full satisfaction of his interest in the estate. It was further agreed that "all legal claims against said estate shall be paid equally by the heirs, Susan M. H. and Simon." By an instrument bearing date the next day, the 29th January, executed under the hand and seal of the defendant Susan, she acknowledges the receipt of the $16,566.99, in full of her interest in the personal estate of the deceased, and also in full of her right of dower in the

lands of which he died seized; and in consideration of the. premises, she releases Samson, the co-administrator, and the plaintiff, her father-in-law, from all claims or demands which she might have against them, or either of them, as the widow of the deceased. A further instrument was signed by the plaintiff to the widow, bearing the same date with the bond and mortgage, to the effect that each of them should take, keep, retain and dispose of the parts and portions of the estate so set apart to be received by each of them respectively as their own individual property.

On the 22d August, 1860, the defendants had a final accounting, as the administrators of John J. Springsteen, before the surrogate of Tioga county. By the summary statement contained in the decree, the aggregate of the personal assets was ascertained to be $33,154.12. The estate was charged with $32,837.12, as paid to the widow and next of kin, and with $971.27 for the administrators' commissions and expenses, including surrogate's fees and for a monument for the grave of the deceased. These were stated in items, the commissions being $431.84; the monument $285;. the funeral expenses $54, and traveling expenses $174, &c. These charges and allowances showed an excess of credits in favor of the administrator of $673.97, which sum was ordered to be paid to them out of moneys which might thereafter come to their hands from the assets of the estate. The decree also stated that there was an indebtedness against the deceased, which was a charge upon the estate, in favor of one B. C. Springsteen, of $175, which was directed to be paid by the administrators out of future assets. The justice found that this amount of $175 had been paid by the plaintiff, and that he had taken an assignment of the demand.

The amount claimed to be due in the advertisement of foreclosure was made out by taking one-half of the amount mentioned in the decree as overpaid by the administrators, and adding interest to the commencement of the foreclosure proceedings. .

The justice held, as matter of law, that the condition of the bond and mortgage did not embrace this claim, but was

limited to demands existing against the deceased in his life-time, which had either matured or were running to maturity, and, hence, that there was nothing shown to be due to the defendants when the foreclosure proceeding was commenced.

Judgment for a perpetual injunction, &c., was accordingly given against the defendants, with costs, which was affirmed at a General Term, upon which they brought this appeal.

There was no fair pretense for instituting the foreclosure proceeding which the defendants had commenced. The parties entitled to the succession of the intestate's property agreed to divide it between themselves, without the delay and expense of distribution by the administrators. The intention probably was to divide the personalty equally according to the rights of the parties; and it would apparently have been just for the original plaintiff, the father of the deceased, to pay a moiety of the funeral expenses, and of the charges incident to a formal accounting, which was necessary to a discharge of the administrators and their sureties, and of the commissions and expenses, if any had been earned or incurred. A provision for these several charges was, perhaps, embraced in the clause of the agreement in which it is provided that all just claims against the estate should be paid equally by the parties, the widow and father of the deceased, though the language does not very clearly look to allowances for commissions or expenses. This, how-ever, is not material, for whatever may be the construction of the agreement, it is very clear that the mortgage only embraces demands existing against the intestate in his life-time, and which had become payable at the date of the agreement, or were to mature subsequently. The language does not admit of any greater latitude, and we have no right to extend it by construction on account of any view we may indulge, that a more comprehensive provision would have been equitable and just. But I have no doubt but that the instruments are precisely in accordance with the intention of the parties to them. The amicable division was entered into to save expense and delay. The idea naturally was, that if the persons entitled voluntarily divided the property between

them, the expense of administration would be saved. The division was made only about a fortnight after the issuing of the letters. An inventory had been made out, and the value of the assets thus ascertained; but it was not shown, and it is not probable that any further expense had been incurred. When the mortgage was executed, about two months afterward, the debts, so far as they had been made known, had been discharged; but it was not certain but that others would subsequently be claimed, and, if they should be, the administrators would be obliged to pay them to the extent of the assets of the deceased which they had parted with. It was quite right and natural that the father, who had received a moiety of the personal property as a distributee, should give security to contribute in the same proportion to any debts which should subsequently appear. This was all which the exigency of the case apparently called for, and, hence, the condition was limited to that object. No debts, except the small amount which the father paid, were ever disclosed. There was, therefore, no ground for enforcing the mortgage. The attempt, by means of it, to collect the considerable amount claimed for commissions and expenses, and the other items allowed by the surrogate, was wholly unauthorized.

The counsel for the defendants makes a point, that, after death of the original plaintiff, the mortgagor, the revival of the action should have been in favor of the parties who succeeded to the ownership of the mortgaged premises; and it is said that the personal representatives had no right to substitute themselves as plaintiffs; and that the judgment is, for that reason, erroneous. It is argued that the provision of the Revised Statutes, which declares that an heir or devisee of land, incumbered by a mortgage given by the ancestor, shall take the estate subject to the lien, has a bearing upon the question. (1 R. S., 749, § 4.) This, I think, is a mis-apprehension. The marshaling of the assets between the real and personal representatives is a matter which does not concern the creditor. He has a right to prosecute the personal representatives, and they would be proper and necessary parties to a bill of foreclosure, for which the statutory proceeding is, in

a certain sense, a substitute. As to the creditor, the personal debt is the principal thing, and the mortgage a collateral security. The statute providing for foreclosures by advertisement, requires that the notice of sale should be served on the personal representatives of the mortgagor. (Laws 1844, ch. 346, § 1.) Representing, as they do, the personalty, and the bond and mortgage being *prima facie* securities for a personal debt, the representatives are entitled to be heard upon a question relating to the existence of the alleged mortgage debt. The equity of the personal representative against the heir or devisee may have been changed after the execution of the mortgage by acts of the mortgagors.

The order substituting the personal representatives of Simon Springsteen in his place is not printed in the case, and we cannot, therefore, say whether the motion was litigated, consented to, or taken by default. Error cannot, therefore, be predicated of the order. Again, no objection that the plaintiffs were not proper parties, or that the owner of the land should have been joined with or without them, was taken on the trial, or is alluded to in the exceptions taken after the decision. There is, it is true, a general exception to the conclusion of the referee, that the plaintiffs are entitled to judgment for a perpetual injunction, but a defect of parties, or an objection that the plaintiffs are not proper parties, is not hinted at. Moreover, the complaint asked for a judgment requiring the mortgage to be satisfied of record; and the judgment actually given enjoins the defendants, not only against proceeding under the advertisement of foreclosure, but from proceeding at any time upon the bond and mortgage, or either of them, by suit or otherwise, for collecting the commissions and expenses allowed by the surrogate; and this relief was within the scope of the case made by the complaint, and was consistent with the case made by the evidence. Surely, the cancellation of a bond and mortgage, given by an intestate, or what is the same thing, an injunction against enforcing such securities, is a subject in which the administrators have a legal interest.

The owner of the land was, doubtless, a proper party to

the controversy, and it would have been necessary to have made him a party to the action, if the objection of want of parties had been seasonably made. It was made for the first time on this appeal, and we think it is not now available.

There was an exception to a ruling as to evidence on the trial which ought to be noticed. A witness, who drew the agreement to divide the property, was allowed to answer a question by the plaintiffs' counsel, whether anything was said between the parties, at that time, as to whether that was a final settlement between them; and he answered, in substance, that they said it was a final settlement, except what was legally necessary to close up the estate. The ruling was excepted to. I do not think the evidence was admissible, for the reason that the instrument, which was then executed, was the only legal evidence of what the agreement was. But the decision of the justice, and the judgment of the court at General Term, are sustained upon the provisions of the instrument itself. The plaintiffs did not need any further proof of the nature of that transaction, and the parol evidence did not change the case in any respect to the prejudice of the defendants.

I am for affirming the judgment of the Supreme Court.

DAVIES and CAMPBELL, JJ., concurred with DENIO, Ch. J.

BROWN, PORTER, WRIGHT, and DAVIS, JJ., were for reversal with a modification of the allowance to the administrators, by striking out the sum ($285) charged for monument.