### PAULETTE MONTOYA *v.* FRED MONTOYA
### (AC 24138)

Schaller, Dranginis and Berdon, Js.

Argued October 15, 2004—officially released September 13, 2005

*Steven D. Ecker*, for the appellant (defendant).

*Samuel V. Schoonmaker IV*, with whom was *Jill H. Blomberg*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, Fred Montoya, challenged certain financial orders made by the trial court in its judgment dissolving his marriage to the plaintiff, Paulette Montoya. He also challenges the court's post-judgment order awarding attorney's fees to the plaintiff to defend the appeal. On appeal, the defendant claims that the court improperly applied the terms of the parties' prenuptial agreement when it (1) calculated the appreciation of assets subject to distribution under the agreement, (2) mixed gross figures with net figures when calculating the net appreciation of assets under the agreement, (3) fixed the amount of attorney's fees to which he was entitled for defending the validity and enforceability of the agreement, and (4) awarded the plaintiff attorney's fees on appeal. We affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On June 17, 1995, just hours prior to their wedding ceremony, the parties executed a prenuptial agreement (agreement) that was the result of a vigorous and con-

tentious negotiation between the parties, both of whom were represented by counsel. The following paragraphs from the agreement are relevant to the issues raised on appeal.

Paragraph seven provides in relevant part that each of the parties "is the owner of separate property, which is specifically enumerated and described on Schedules 'C' and 'D' [which are the parties' respective premarital net worth statements]. . . . Any assets obtained by either party as a consequence of the use, investment, reinvestment or any transfer of any portion of his or her separate property, and any income therefrom, and any appreciation in the value thereof, shall remain part of his or her separate property and separate estate. It is specifically agreed by and between the parties that such property shall remain the sole and exclusive separate property of the party who is the owner thereof, and such party shall be solely entitled to make any determinations relative to the retention, sale, mortgaging or other disposition thereof, free and clear of any claim or control of the other."

Paragraph eight provides in relevant part: "In the event that the contemplated marriage of the parties hereto shall end in divorce . . . separate property shall be valued at not less than the values . . . on Schedules 'C' and 'D' and shall be appraised at the time of such divorce . . . in order to determine the appreciation and/or depreciation of each item of such separate [property]. The appreciation, if any, shall constitute marital property . . . [to] be divided between the parties equally. In the event that there shall be a depreciation in the value of such separate property, then the amount of such depreciation shall constitute a credit as against the total value of the marital property, running to the benefit of the owner of such depreciated separate property. Subject to the foregoing . . . in the event that the

parties shall become divorced . . . each party shall retain such separate property."

Paragraph nine provides in relevant part: "Subject to the terms of this Agreement, each party hereto shall during his or her lifetime keep and retain sole owner-ship, control and enjoyment of all property which is his or her separate property under the terms of this Agreement . . . ."

Paragraph ten provides in relevant part: "[E]ach of the parties shall have the absolute right to manage, dispose of, or otherwise deal with any property now separately owned, or hereafter separately acquired, in any manner whatsoever."

Paragraph twelve provides in relevant part: "In the event that the contemplated marriage of the parties hereto shall end in divorce . . . the parties hereto agree . . . [that][e]ach party shall be responsible [for] his or her own legal fees and expenses . . . ."

Paragraph fourteen provides in relevant part: "All property received by a party as compensation for his or her personal services, skill or effort (whether received before or during the marriage of the parties hereto) shall be and remain the separate property of the party receiving such property. . . ."

Paragraph seventeen provides in relevant part: "Any assets obtained by either party as a consequence of the use, investment, reinvestment or any transfer of any portion of his or her separate property, and any income therefrom, and any appreciation in the value thereof, shall remain part of his or her separate property and separate estate."

Paragraph eighteen provides in relevant part: " 'Mari-tal property' includes all property acquired by either party after the date of the marriage by the use of any economic resources not defined herein as being 'sepa-

rate property,' and all property placed in joint names and any other property specifically identified by the parties as being joint property."

Paragraph twenty-six provides in relevant part: "The parties specifically agree that this Ante-Nuptial Agreement and all of the rights and obligations of the parties hereunder shall be construed and interpreted according to the Laws of the State of New York. . . ."

Paragraph thirty-two provides: "In the event that either party initiates litigation against the other with respect to this Agreement, the successful party shall be entitled to receive, in addition to any award followed by any Court, the amount of reasonable attorney['s] fees fixed by the Court before [which] this litigation was initiated as an additional amount to be added to the judgment awarded to the successful party."

Paragraph thirty-four provides in relevant part: "The parties acknowledge that this Ante-Nuptial Agreement is a document which has been negotiated by both parties and the parties agree that for purposes of construction neither party is deemed to be the draftsman thereof."

On April 12, 2001, the plaintiff filed a complaint seeking dissolution of the marriage. In May, 2002, the court declared a mistrial in the first dissolution trial due to problems with the plaintiff's financial affidavit. On March 4, 2003, after hearing testimony over several days, the court, *Shay, J.*, rendered judgment ordering the marriage dissolved and made certain financial orders and property divisions. In its memorandum of decision, the court found that the marriage of the parties had broken down irretrievably and that both parties had contributed to the breakdown. Turning to the agreement, the court upheld the choice of law provision and applied New York law because it found no evidence of misrepresentation, fraud or undue influence underly-

ing the choice of law provision. The court then concluded that under New York law, contrary to the plaintiff's argument, the agreement was valid and enforceable because it was in writing, subscribed to by the parties, acknowledged and was not unconscionable at the time of entry of final judgment or procured by fraud, deception or undue influence.[1]

When construing the agreement, the court concluded that it "very clearly calls for an equal division of the net appreciation in value of the assets originally disclosed . . . and this the court proposes to accomplish." The court set forth the following explanation of its construction of the agreement in a lengthy footnote: "In order to give meaning and effect to the agreement, the court has read it as a whole, in particular [paragraphs] eight, fourteen and seventeen. The court has considered a significant factor in its decision the fact that the document was drafted by the attorney for the [defendant]. In addition, the court presumes that the parties understood the meaning and intended the consequences of their words. The court has resolved the apparent conflict between the legal consequences which flow from the implementation of those provisions of the agreement relating to the terms 'separate property' and those relating to 'appreciation' in value (which is considered 'marital property') with regard to individual assets, by finding that the clear meaning and intent of the parties as to the former relates to title and possession of 'separate property' at the beginning and end of the marriage, while the term 'appreciation' embodies the intent of the parties to recognize and quantify their respective tangible and intangible contributions to the marriage during its term, and to provide a rational method of dividing the same."

---

[1] Neither the court's conclusion regarding the choice of law nor its conclusion regarding the validity of the agreement are issues on appeal.

The court concluded that "after considering all of the provisions of the agreement as a whole . . . each party is entitled to one-half" of the appreciation in value of the parties' separate property. The court found that the combined appreciation of the parties' separate property was $828,689. The court divided this sum by two and then subtracted $79,191, the amount that the plaintiff's property had appreciated. After those calculations, the court concluded that the defendant owed the plaintiff $335,154. Pursuant to paragraph thirty-two, the court also concluded that because the plaintiff had challenged the validity of the agreement, the defendant, as the successful party, was entitled to reasonable attorney's fees as fixed by the court. The court then found that the defendant's reasonable attorney's fee attributable to the plaintiff's challenge was $15,000, which was to be deducted from the amount owed by the defendant. Accordingly, the court ordered the defendant to pay the plaintiff the sum of $320,154.

After the defendant filed his appeal, the plaintiff filed a motion for attorney's fees to defend the appeal. The court, *Hon. Dennis F. Harrigan*, judge trial referee, granted the motion and ordered the defendant to pay the plaintiff $5000. The defendant then filed an amended appeal seeking review of the decision to award the plaintiff appellate attorney's fees.

The defendant next filed a motion for articulation regarding the court's award of attorney's fees in the dissolution judgment. The court denied that motion. We granted the defendant's motion for review and ordered the trial court to articulate whether it awarded attorney's fees to the defendant for fees incurred in connection with the mistrial and the grounds on which it had determined that the defendant was not entitled to the entire amount claimed in his fee application. In its articulation, the court stated that it "did not award any attorney's fees to the defendant in connection with

the mistrial" and that "the award of $15,000 in attorney's fees was fair and equitable under all the circumstances and supported by the evidence." Additional facts will be set forth as necessary.

The defendant's claims on appeal concern the court's construction of provisions in the agreement relating to the calculation of the appreciation of the parties' assets subject to distribution and its application of provisions regarding payment of attorney's fees. Because the court's decision upholding the choice of law provision has not been challenged on appeal, we will apply New York law to the substantive claims in this case, including those concerning contract construction.

A prenuptial agreement is subject to the same principles of contract interpretation as other contracts: "[It] must be read as a whole to determine the parties' intent, giving a practical interpretation to the language employed so that the parties' reasonable expectations are realized . . . ." (Citation omitted.) *DelDuca* v. *DelDuca*, 304 App. Div. 2d 610, 610–11, 758 N.Y.S.2d 145 (2003). In addition, every term of a contract must be given effect and meaning, and "reasonable effort must be made to harmonize all of its terms . . . ." (Citation omitted; internal quotation marks omitted.) *Village of Hamburg* v. *American Ref-Fuel Co.*, 284 App. Div. 2d 85, 89, 727 N.Y.S.2d 843, leave to appeal denied, 97 N.Y.2d 603, 760 N.E.2d 1288, 735 N.Y.S.2d 492 (2001). "Where the document makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the [agreement] . . . ." (Citation omitted; internal quotation marks omitted.) *Kass* v. *Kass*, 91 N.Y.2d 554, 567, 696 N.E.2d 174, 673 N.Y.S.2d 350 (1998). Each part of a written contract must be interpreted so as to give effect to the general purpose of the agreement. *Westmoreland Coal Co.* v. *Entech, Inc.*, 100 N.Y.2d 352, 358, 794 N.E.2d 667, 763

N.Y.S.2d 525 (2003). A court "may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing . . . ." (Citation omitted; internal quotation marks omitted.) *Vermont Teddy Bear Co.* v. *538 Madison Realty Co.*, 1 N.Y.3d 470, 475, 807 N.E.2d 876, 775 N.Y.S.2d 765 (2004); see also *Petracca* v. *Petracca*, 302 App. Div. 2d 576, 577, 756 N.Y.S.2d 587 (2003) (contract should not be interpreted to leave provisions substantially without force or effect). "[W]here two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect . . . ." (Citation omitted; internal quotation marks omitted.) *HSBC Bank USA* v. *National Equity Corp.*, 279 App. Div. 2d 251, 253, 719 N.Y.S.2d 20 (2001). "[I]f there is an inconsistency between a general provision and a specific provision of a contract, the specific provision controls . . . ." (Citation omitted; internal quotation marks omitted.) *Bank of Tokyo-Mitsubishi, Ltd.* v. *Kvaerner a.s.*, 243 App. Div. 2d 1, 8, 671 N.Y.S.2d 905 (1998). The words in an agreement must be given their ordinary and plain meaning. *Olson* v. *Kehoe Component Sales, Inc.*, 242 App. Div. 2d 902, 903, 662 N.Y.S.2d 647 (1997).

We must, however, follow the law of Connecticut on procedural issues such as the appropriate standard of appellate review. See *Zenon* v. *R. E. Yeagher Management Corp.*, 57 Conn. App. 316, 322, 748 A.2d 900 (2000). If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. *Issler* v. *Issler*, 250 Conn. 226, 235–36, 737 A.2d 383 (1999). Under plenary review, we must decide whether the trial court's conclusions of law are legally and logically correct and find support in the record. *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000).

If a contract is ambiguous, the clearly erroneous standard of review is used because the intent of the parties is a question of fact. *Smithfield Associates, LLC* v. *Tolland Bank*, 86 Conn. App. 14, 18, 860 A.2d 738 (2004), cert. denied, 273 Conn. 901, 867 A.2d 839 (2005). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Efthimiou* v. *Smith*, 268 Conn. 487, 493–94, 846 A.2d 216 (2004); *Miller* v. *Guimaraes*, 78 Conn. App. 760, 766–67, 829 A.2d 422 (2003). "Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence." (Internal quotation marks omitted.) *LaVelle* v. *Ecoair Corp.*, 74 Conn. App. 710, 716, 814 A.2d 421 (2003).

Accordingly, to determine the appropriate standard of review for each of the claims that challenge the court's construction of the agreement, we must first ascertain whether the relevant language in the agreement is ambiguous. *Smithfield Associates, LLC* v. *Tolland Bank*, supra, 86 Conn. App. 19. A contract is ambiguous when, on its face, it is reasonably susceptible to more than one interpretation. See *Chimart Associates* v. *Paul*, 66 N.Y.2d 570, 572–73, 489 N.E.2d 231, 498 N.Y.S.2d 344 (1986). Contract language is unambiguous when it has a definite and precise meaning concerning which there is no reasonable basis for a difference of opinion. *Breed* v. *Ins. Co. of North America*, 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 413 N.Y.S.2d 352 (1978); see also *Detels* v. *Detels*, 79 Conn. App. 467, 472, 830 A.2d 381 (2003) (contract ambiguous if intent of parties not clear and certain from language itself).

I

The defendant claims that the court improperly applied the terms of the agreement when it calculated the appreciation of assets subject to distribution under the agreement. Specifically, the defendant claims that it was improper to include as appreciation (1) the parties' earned compensation, in the form of pension and profit sharing plans, and (2) his earned compensation that he subsequently used to make improvements to his real estate. Before discussing the defendant's specific claims, we will address various preliminary issues that affect our resolution of those claims.

At the outset, we must determine the appropriate standard of review. The defendant, citing *Issler* v. *Issler*, supra, 250 Conn. 226, contends that the court relied solely on language within the four corners of the agreement to determine its meaning, and, therefore, that we must apply the plenary standard of review to his claim. We disagree. The court considered testimony regarding the parties' intent. In its memorandum of decision, the court stated that it heard the testimony of both parties over the course of several days—some of which pertained to the parties' respective interpretations of the provisions at issue. The court described the "apparent conflict" between the provisions relevant to the claims and stated that it sought to find the "clear meaning and intent of the parties" by examining the provisions and considering the evidence presented at trial.

The intent of the parties regarding whether earned compensation in the form of pension and profit sharing plans and earned compensation subsequently used to make improvements to real estate were to be included as part of the appreciation of assets subject to distribution was *not* made definite and precise by the language of the agreement. Cf. *Breed* v. *Ins. Co. of North America*,

supra, 46 N.Y.2d 355. The facial inconsistencies in the agreement made it reasonably susceptible to different interpretations regarding the manner in which the various provisions relevant to those issues are to be given effect. Cf. *Chimart Associates* v. *Paul*, supra, 66 N.Y.2d 573. We therefore conclude that the relevant language in the agreement is ambiguous. Accordingly, we apply the clearly erroneous standard of review to those claims. Cf. *Amodio* v. *Amodio*, 56 Conn. App. 459, 470, 743 A.2d 1135, cert. granted on other grounds, 253 Conn. 910, 754 A.2d 160 (2000) (appeal withdrawn September 27, 2000).

Next, the defendant contends that the evidence relevant to those claims does not support the court's interpretation of the agreement. The defendant provides numerous transcript citations to show that the court attributed an intention to the parties regarding those issues that was contrary to the evidence. The defendant's implicit argument is that because the agreement was ambiguous, the court was somehow bound to comport its construction according to the trial testimony. We disagree.

As we have noted, the court did consider the evidence presented at trial. It did not, however, find the testimony supporting the defendant's construction of the agreement credible. The court stated: "[The defendant] has asked the court to grant some relief outside of the 'four corners' of the agreement he wishes the court to uphold. This the court is not prepared to do. . . . The [defendant's] claims above and beyond the division are unfair and unwarranted, and they are, quite frankly, under all the circumstances, rather heavy-handed."

The court had the unenviable task of construing an agreement made ambiguous by inconsistent provisions. Pursuant to the applicable rules of construction, the court read the agreement as a whole and considered

the evidence presented at the hearing. We acknowledge that the evidence submitted by the defendant—and even some submitted by the plaintiff—does not support the court's construction. It was the court's role, however, to weigh all the evidence, including the agreement itself and the testimony regarding the parties' intent. The court was free to assess the credibility of the witnesses and to reject proposed constructions that it determined were not consistent with the language of the agreement.

The defendant also argues that pursuant to paragraph thirty-four, it was improper for the court to find that the defendant was the drafter of the agreement. Paragraph thirty-four states in relevant part that "for purposes of construction neither party is deemed to be the draftsman [of the agreement.]" In explaining its interpretation of the agreement, the court stated that it "has considered a significant factor in its decision the fact that the document was drafted by the attorney for the [defendant]. In addition, the court presumes that the parties understood the meaning and intended the consequences of their words." Implicit in the defendant's argument is that because the court stated that the finding was a "significant factor" in its decision, the court must have applied the rule of contra proferentum and construed the agreement against the defendant.

"The rule of *contra proferentum* is generally said to be a rule of last resort and is applied only where other secondary rules of interpretation have failed to elucidate a contract's meaning. . . . [The rule is applied] only when . . . the court must choose between two or more reasonable meanings . . . ." (Emphasis in original.) 11 S. Williston, Contracts (4th Ed. 1999) § 32:12, pp. 480–82. "After the court has examined all of the other factors that affect the search for the parties' intended meaning . . . and the only remaining question is which of two possible and reasonable meanings

should be adopted, the court will often adopt the meaning that is less favorable in its legal effect to the party who chose the words. This technique is known as '*contra proferentum*'." (Emphasis in original.) 5 A. Corbin, Contracts (1998) § 24.27, pp. 282–83. "The . . . rule has been described as being applicable only as a last resort, when other techniques of interpretation and construction have not resolved the question of which of two or more possible meanings the court should choose. One court wrote that the rule is 'a tie breaker *when there is no other sound basis for choosing one contract interpretation over another.*' The rule is not applicable at all if only one reasonable meaning is possible." (Emphasis added.) Id., p. 297. "[The rule] directs the court to choose between two or more possible reasonable meanings on the basis of their legal operation, i.e., whether they favor the drafter or the other party." Id., p. 306.

Although the court stated that the finding regarding which party drafted the agreement was a "significant factor in its decision," that statement cannot be viewed as an indication that the court applied the rule of contra proferentum. To properly invoke the rule, the court would have had to have been left without a resolution as to the appropriate construction of the agreement after having applied the other applicable rules of construction and then would have had to conclude that there were two or more reasonable constructions from which to choose. The court, however, applied the primary rules of construction, read the language of the agreement as a whole and accomplished what it considered to be the main purpose of the agreement. In addition, the court did not have occasion to choose between two or more *reasonable meanings* because it expressly rejected the defendant's proposed construction as *unreasonable* when it determined that it was not consistent with the language of the agreement.

Although we agree with the defendant that the unambiguous language of the agreement made it unnecessary, if not improper, for the court to make a factual finding regarding which party drafted the agreement, we do not agree that the finding requires reversal of the judgment. As discussed, the court resolved the contract construction issues presented in this case by applying the overriding contract law principle to effectuate the main purpose of the contract. The court did not have occasion to apply the rule of contra proferentum as a last resort or as a tiebreaker. The defendant did not request an articulation of the court's statement. On the basis of the court's statement alone, we cannot assume that the court's improper finding prejudiced the defendant. We now turn to the defendant's specific claims.

A

The defendant first claims that the court improperly applied the terms of the parties' prenuptial agreement when it included the parties' earned compensation, in the form of pension and profit sharing plans, as part of the appreciation of assets subject to distribution under the agreement. The defendant contends that the court applied paragraph eight, which establishes the basic formula for calculating the appreciation of the parties' separate property that is subject to distribution as marital property, while ignoring paragraph fourteen, which he argues excludes from distribution any amounts received by either party as compensation. The defendant further argues that paragraph eighteen's definition of "marital property," which excludes separate property, reinforces the premise that compensation—deemed separate property by paragraph fourteen—cannot be included in the appreciation of assets subject to distribution as marital property under paragraph eight. In addition to his textual arguments, the defendant contends that the evidence submitted at trial establishes that the parties did not intend to include the appreciated

value of the pension and profit sharing funds in the distribution.

The defendant argues that the court's construction of the agreement led it to include improperly $266,428 of compensation and interest that was deposited during the marriage into his pension and profit sharing plans in its calculation of the appreciation of his assets. Although the defendant acknowledges that the court similarly miscalculated appreciation of the plaintiff's assets, he argues that because his accounts grew more during the marriage than those of the plaintiff, the net effect of failing to exclude both parties' compensation from its distribution resulted in an award to the plaintiff's advantage of approximately $93,910.

The court expressly recognized the ambiguity caused by paragraphs eight and fourteen and attempted to "give meaning and effect" to the agreement by "resolv[ing] the apparent conflict between the legal consequences which flow from the implementation of those provisions of the agreement relating to the terms 'separate property' and those relating to 'appreciation' in value (which is considered 'marital property') with regard to individual assets, by finding that the clear meaning and intent of the parties as to the former relates to title and possession of 'separate property' at the beginning and end of the marriage, while the term 'appreciation' embodies the intent of the parties to recognize and quantify their respective tangible and intangible contributions to the marriage during its term, and to provide a rational method of dividing the same."

By adopting that construction, the court accomplished what it considered to be the primary purpose of the agreement: "[E]qual division of the net appreciation in value of the assets originally disclosed in schedules C and D . . . ." Accordingly, the court gave effect to the distribution of the appreciation of separate assets

listed on the parties' respective premarital net worth statements as called for by paragraph eight. As evidenced by its findings and orders, the court found that the parties intended to value *all* the assets listed on the schedules at the end of the marriage, including the pension and profit sharing plans, and to divide the net appreciation *without* excluding the compensation or interest added to those assets during the marriage.

Pursuant to the applicable rules of construction, the court interpreted the isolated provisions so as to give effect to the general purpose of the agreement. See *Westmoreland Coal Co.* v. *Entech, Inc.*, supra, 100 N.Y.2d 358. Rather than construing paragraph fourteen to exclude compensation from the amount subject to distribution as marital property under paragraph eight, the court construed it merely to establish title to the parties' separate property at the end of the marriage.[2] Although the court did not mention paragraph eighteen specifically, it apparently did not construe it to modify the distribution called for by paragraph eight.

The court concluded that under the agreement, the assets enumerated on schedules C and D would remain *both* separate property and be included in the calculation of appreciation that would constitute marital prop-

---

[2] "The law prefers an interpretation which gives effect to all parts of the contract rather than one which leaves a portion of the contract ineffective or meaningless. But where this is not possible, the court will seek to interpret the contract in a way that will at least effectuate the principal or main apparent purpose of the parties. Furthermore, if a portion of the contract is irreconcilable with the main purpose of the contract, that portion will be given no effect in order that the main purpose of the contract can be achieved. Similarly, sometimes particular words or provisions of a contract will be disregarded in order to give effect to the general meaning of a contract." S. Williston, supra, § 32:9, pp. 440–42.

As discussed, the court's construction in this case sought to effectuate the primary purpose of the agreement while attempting to harmonize and give effect to several inconsistent provisions. In contrast, the dissent's construction seeks to give effect only to paragraph fourteen, while leaving several other paragraphs ineffective.

erty subject to equal distribution. Under the court's construction, after that distribution was accomplished, the parties retained ownership of their separate property. Paragraphs nine and ten clearly provide that each party had the power to control where they invested their earned income or any other separate property. Therefore, each party could have shielded their earned compensation from the calculation of appreciation and the subsequent distribution simply by placing their earned compensation into a new account or another asset not enumerated on their respective schedules.

In addressing the defendant's claim, we carefully have considered the court's explanation of its construction of the agreement, the relevant paragraphs of the agreement and the evidence submitted at trial regarding the parties' intent. As discussed, because the agreement is ambiguous with respect to the defendant's claim, the parties' intent is a question of fact. Accordingly, we apply the clearly erroneous standard of review. We conclude that there is evidence to support the court's findings regarding the parties' intent and its subsequent construction of the agreement. We are not left with the definite and firm conviction that the court improperly included the parties' earned compensation, in the form of pension and profit sharing plans, as part of the appreciation of assets subject to distribution under paragraph eight. See *Efthimiou* v. *Smith*, supra, 268 Conn. 493–94. Accordingly, the defendant's claim must fail.

B

The defendant next claims that the court improperly applied the terms of the agreement when it included earned compensation that he subsequently used to make improvements to his real estate as part of the appreciation of assets subject to distribution under the agreement. In addition to his previous argument that

earnings are separate property pursuant to paragraph fourteen, the defendant argues that paragraph seventeen excludes earnings subsequently invested in scheduled assets from the calculation of the appreciation of those assets subject to distribution under paragraph eight. The defendant contends that it was improper to include $168,000 of earnings he invested into the house on Newtown Turnpike in Westport—one of his scheduled assets—because only *net* appreciation of scheduled assets was to be included in the calculation of appreciation. In other words, the defendant contends that the court should have allowed a "credit" for the amount he invested into the house for renovations when it calculated the "net" appreciation of the house during the marriage.

The court stated that it had paid particular attention to paragraphs eight, fourteen and seventeen when it read the agreement and acknowledged the conflict between those provisions. As discussed, the court construed the term "separate property" as relating to the parties' intent to establish title and possession at the beginning and end of the marriage and construed the term "appreciation" as embodying the parties' intent to quantify and to divide the contributions made by each to the marriage as measured by the net appreciation in the value of their respective scheduled assets. That construction enabled the court to give effect to what it considered to be the primary purpose of the agreement—distribution of the net appreciation in the value of the scheduled assets—without modifying the calculation called for by paragraph eight. In other words, the court found that the parties intended that deposits to their respective scheduled assets be included in the calculation of appreciation called for by paragraph eight but that each party would retain ownership of the separate property once that calculation was accomplished. Thus, the court found that

although the defendant retains ownership of the house as separate property, the appreciation in the value of the house, including the appreciation in value attributable to his investment of his earnings in renovations, was properly included in calculating the value of the appreciation subject to distribution under paragraph eight.

Once again, we note that we have considered the court's construction, the relevant provisions and the evidence regarding the parties' intent. Although we conclude that the court's construction was proper, we note that it was not the only construction possible. We apply the clearly erroneous standard of review to the defendant's claim because the relevant provisions are ambiguous. Limited by that standard of review, we conclude that there is evidence to support the court's construction and that we are not left with the definite and firm conviction that the court improperly included the defendant's earnings subsequently invested into renovations of the house as part of the appreciation of assets subject to distribution under paragraph eight. See id.

II

The defendant next claims that the court improperly mixed gross figures with net figures when calculating the net appreciation of assets under the agreement. Specifically, the defendant argues that it was improper for the court to subtract the 1995 *net* value of the scheduled assets from the 2002 *gross* values when calculating the *net* appreciation in value of those assets subject to distribution under paragraph eight. The defendant contends that because the court did not subtract liabilities from the 2002 gross values, the court automatically converted the parties' liabilities into asset appreciation. We decline to review this claim because the defendant has failed to provide an adequate record for appellate review.

The agreement does not contain the terms "net" or "gross," nor does it define the terms "appreciation" or "depreciation." Paragraph eight states only that the scheduled assets "shall be appraised . . . in order to determine the appreciation and/or depreciation of each item of such separate [property]. The appreciation, if any, shall constitute marital property . . . [to] be divided between the parties equally." Neither paragraph eight nor any other paragraph in the agreement discusses how liabilities are to be treated.

In its memorandum of decision, the court stated that the "agreement very clearly calls for an equal division of the net appreciation in value of the assets originally disclosed in schedules C and D . . . ." The court made the following findings: "[T]he evidence indicates that at the time of the execution of the agreement, the [defendant's] separate property as set forth in schedule C of the agreement had a value of $1,107,000; that taking into account gains and losses in value, the value of these assets was $1,856,498; and that the appreciation in value during the marriage was $749,498 . . . [and that] the [plaintiff's] separate property as set forth on schedule D of the agreement had a value of $221,186; that taking into account gains and losses in value, the value of these assets was $300,377; and that the appreciation in value during the marriage was $79,191. . . [and that] the combined appreciation of the [defendant's] and [the plaintiff's] separate property was $828,689; that after considering all the provisions of the agreement as a whole, under the terms of same, each party is entitled to one half of . . . the value of said appreciation . . . ." The court then ordered the defendant to pay the plaintiff "the sum of $320,154 . . . which sum represents [one half] of the net appreciation in value of the assets per their agreement, less a credit . . . for the net appreciation of [the plaintiff's] separate assets and a credit to the [defendant] for attorney's fees."

In its memorandum of decision, the court did not completely explain the basis for its decision to find the "net appreciation" in the value of the parties' scheduled assets, nor did the court clarify what it meant by the term. Furthermore, the court did not explain how it arrived at the figures used to calculate appreciation. Finally, the court made no findings regarding liabilities that either party may have had with respect to the scheduled assets.

It was the defendant's burden to provide this court with an adequate record for our review. See Practice Book § 61-10. "It is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review. . . . [A]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claim] would be entirely speculative." (Citations omitted; internal quotation marks omitted.) *Gladstone, Schwartz, Baroff & Blum* v. *Hovhannissian*, 53 Conn. App. 122, 127, 728 A.2d 1140 (1999).

The defendant failed to file a motion for articulation of the court's decision regarding his claim. See Practice Book § 66-5. "An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear." (Citations omitted.) *State* v. *Wilson*, 199 Conn. 417, 434, 513 A.2d 620 (1986). "It is well settled that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis

upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . The . . . failure to seek an articulation of the trial court's decision to clarify the aforementioned issues and to preserve them properly for appeal leaves this court without the ability to engage in a meaningful review." (Internal quotation marks omitted.) *Bebry* v. *Zanauskas*, 81 Conn. App. 586, 594, 841 A.2d 282 (2004). Accordingly, we decline to review the claim.

## III

The defendant next claims that the court considered the wrong factors when it fixed the amount of attorney's fees to which he was entitled for defending the validity and enforceability of the agreement. Specifically, the defendant argues that because, under the agreement, a party challenging the agreement must pay the reasonable fees of the other party, it was improper to consider factors relevant to determining the threshold question of *whether* to award attorney's fees, including litigation misconduct and the financial circumstances of the parties. Instead, the defendant argues that the court should have considered factors relevant to determining the *reasonableness* of the fee. In addition, the defendant argues that it was improper for the court to ignore testimony that supported his request for more than $97,000 in fees and expenses that he claims were attributable to his efforts to defend the agreement.

Before discussing that claim, we identify the applicable standard of review. The abuse of discretion standard applies to trial court decisions regarding the amount of attorney's fees to award. *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 252, 828 A.2d 64 (2003). "Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review

of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) Id., 253.

The parties' agreement contains two paragraphs that are relevant to the issue. Paragraph twelve provides in relevant part: "In the event that the contemplated marriage of the parties hereto shall end in divorce . . . [e]ach party shall be responsible [for] his or her own legal fees and expenses . . . ." Paragraph thirty-two provides: "In the event that either party initiates litigation against the other with respect to this agreement, the successful party shall be entitled to receive, in addition to any award followed by any Court, the amount of reasonable attorney['s] fees fixed by the Court before [which] this litigation was initiated as an additional amount to be added to the judgment awarded to the successful party."

In its memorandum of decision, the court made the following findings: "That under the terms of [paragraph thirty-two] of the agreement, should either party initiate litigation with respect to the agreement, the successful party is entitled to reasonable attorney's fees as fixed by the court; that the [plaintiff] has initiated a claim challenging the validity of the agreement; that the court has found the agreement to be valid and enforceable; that the court finds that the reasonable attorney's fee attributable to this challenge is $15,000, which may be deducted from the sums to be paid to the [plaintiff] . . . and that, in any event, the court finds that each party has sufficient liquid assets and should be responsible for the balance of their respective attorney's fees and costs incurred in connection with this action." (Citation omitted.)

The court denied the defendant's motion for articulation regarding the award of attorney's fees. We granted

the defendant's motion for review and granted the relief requested, ordering the court to articulate as to (1) whether it awarded attorney's fees to the defendant for fees incurred in connection with the mistrial and (2) the grounds on which it had determined that the defendant was not entitled to the entire amount claimed in his fee application.[3]

In its articulation, the court explained that under paragraph thirty-two of the agreement, reasonable attorney's fees, in the event of a failed challenge, would be " 'fixed by the court.' " The court also explained that under New York law, "the award of attorney's fees is within the sound discretion of the court." The court cited *O'Shea* v. *O'Shea*, 93 N.Y.2d 187, 711 N.E.2d 193, 689 N.Y.S.2d 8 (1999), which stated that "[t]he award [of attorney's fees] is now measured by circumstances and discretion . . . ." (Citation omitted.) Id., 192. The court quoted the following provision from N.Y. Domestic Relations Law § 237 (d) (McKinney 1999): "In determining the appropriateness and necessity of fees, the court shall consider: 1. The nature of the marital property involved; 2. The difficulties involved, if any, in identifying and evaluating the marital property; 3. The services rendered and an estimate of the time involved; and 4. The applicant's financial status." The court stated that under the statute, attorney's fees are not to be awarded for punitive reasons but that they have been upheld when they were based on the " 'dilatory and obstructionist tactics' " of one of the parties.

The court articulated that it did not award any attorney's fees to the defendant in connection with the mistrial because it did not find that the conduct of the plaintiff in connection with the mistrial rose to the level of an ongoing pattern of " 'dilatory and obstructionist

---

[3] Two related articulation requests were denied because they were redundant.

tactics.'" The court further articulated that "[o]ther than the testimony of the [defendant] and his witness, the court had no additional credible evidence before it regarding his efforts to defend the agreement." The court stated that it had reviewed the defendant's affidavit asking for attorney's fees and found that the time related to the conference with and the testimony of the defendant's expert witness was "the best measure of the [defendant's] efforts to defend the [agreement] . . . ." The court concluded its articulation by stating that the "award of $15,000 in attorney's fees was fair and equitable under all the circumstances and [was] supported by the evidence."

To the extent the court relied on the factors enumerated under N.Y. Domestic Relations Law § 237 (d) (McKinney 1999), that reliance was misguided. Section 237 authorizes a court, in certain matrimonial actions or proceedings, to direct either spouse to pay such sums as necessary to enable the other spouse to prosecute or to defend the action, thereby allowing a less affluent spouse to obtain appropriate legal services. By its terms, § 237 applies to an "(a) . . . action or proceeding brought to (1) annul a marriage or to declare the nullity of a void marriage, or (2) for a separation, or (3) for a divorce . . . ." The commentary to § 237 explains that "[w]here an action or proceeding is not one expressly included [under the statute], no award of counsel fees may be made thereunder. Actions which do not qualify are often referred to as non-matrimonial actions. Thus, it is well settled that actions to enforce or rescind agreements between spouses, such as separation agreements or antenuptial contracts, are not matrimonial actions in which awards of counsel fees and expenses may be made [pursuant to § 237]."[4]

---

[4] See *Donnarumma* v. *Donnarumma*, 72 App. Div. 2d 545, 420 N.Y.S.2d 729 (1979) (holding that attorney's fee award made pursuant to New York Domestic Relations Law § 237 for legal services relating to rescission of separation agreement improper because it is nonmatrimonial issue, but remanding for determination of portion of fee rendered for matrimonial

When a prenuptial agreement precludes awards of attorney's fees, courts will enforce the preclusion despite § 237, unless the entire agreement is found to be invalid. See *Klein* v. *Klein*, 246 App. Div. 2d 195, 198–99, 676 N.Y.S.2d 69 (1998). In this case, pursuant to paragraph twelve of the parties' agreement, the parties are responsible for their own legal fees and expenses in the event of divorce. Pursuant to paragraph thirty-two, however, if either party initiates litigation against the other with respect to the agreement, the successful party is entitled to receive reasonable attorney's fees as fixed by the court. Where a prenuptial agreement provides the basis for an award of counsel fees, the terms of the agreement will control the award rather than the provisions of § 237. See *Millard* v. *Millard*, 246 App. Div. 2d 349, 667 N.Y.S.2d 714 (1998). The court properly found that pursuant to paragraph thirty-two, the defendant was entitled to that portion of his attorney's fees attributable to his defense of the validity of the agreement. It was improper, however, for the court to rely on the factors enumerated in § 237 because actions relating to the enforcement of prenuptial agreements are not considered matrimonial actions within the control of § 237.

The defendant, citing *Steiger* v. *Dweck*, 305 App. Div. 2d 475, 762 N.Y.S.2d 84 (2003), contends that in determining the *reasonableness* of the fee to which he was entitled, the court should have considered the following factors: "[T]ime and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyer's experience, ability and reputation; the amount involved and

issues such as divorce); *Lamborn* v. *Lamborn*, 56 App. Div. 2d 623, 391 N.Y.S.2d 679 (1977) (improper under § 237 to award attorney's fees for legal services exerted to adjudge the antenuptial agreement to be valid and enforceable), leave to appeal dismissed, 42 N.Y.2d 803, 366 N.E.2d 1364, 397 N.Y.S.2d 1028 (1977).

benefit resulting to the client from the services . . . the contingency or certainty of compensation; the results obtained; and the responsibility involved . . . ."[5] (Citation omitted; internal quotation marks omitted.) Id., 476. The defendant implicitly argues that had the court considered these factors, the amount of its award would have been greater. We disagree.

Even if the court had considered those factors, its award could not have been greater because the court's factual findings regarding the amount that the defendant expended to defend the agreement supported a maximum award of only $15,000. Pursuant to paragraph thirty-two, the court could award only the amount of reasonable attorney's fees attributable to the defendant's defense of the agreement. As fact finder, the court's role was to weigh the evidence and to assess the credibility of the witnesses when it determined the amount of the fees that were attributable to the defendant's defense of the agreement. The court based its finding on the testimony of the defendant and his expert, which it described as the only "credible evidence before it regarding [the defendant's] efforts to defend the agreement," and on its review of the defendant's affidavit. Although the defendant requested a greater amount, the court's factual finding could not support an award greater that $15,000. In other words, even if the court had applied the proper factors to determine the reasonableness of the fee requested by the defendant, its award could not have exceeded the amount of its factual finding regarding the amount the defendant had expended to defend the agreement. Giving appropriate deference to the court's factual findings, we conclude that the court's award did not constitute an abuse of discretion.

---

[5] We note that apart from the factor related to financial status, the factors enumerated under N.Y. Domestic Relations Law § 237 (d) (McKinney 1999) are not strikingly dissimilar to the factors listed by the defendant.

## IV

Finally, the defendant claims that the court improperly awarded the plaintiff attorney's fees to defend the defendant's appeal. Specifically, the defendant argues that paragraph twelve of the parties' agreement precluded an award of fees for the appeal. The plaintiff counters that the award of fees to defend the appeal was a proper exercise of judicial discretion.

After the defendant filed this appeal, the plaintiff filed a motion for counsel fees pending appeal, in which she requested an order "requiring the defendant to pay a reasonable sum towards the plaintiff's counsel fees, post judgment, to allow her to defend the appeal brought by the defendant." The court granted the motion and ordered the defendant to pay the plaintiff $5000 "as an allowance to defend the defendant's appeal." The court did not discuss the provisions of the parties' agreement that address attorney's fees, nor did the court cite any statute authorizing an appellate fee award.

The decision whether to award appellate attorney's fees rests, in the first instance, in the exercise of discretion by the trial court. *Torres* v. *Waterbury*, 30 Conn. App. 620, 627, 621 A.2d 764 (1993). A prevailing party may recover such fees only if authorized by either statute or contract. *Neiditz* v. *Housing Authority*, 42 Conn. App. 409, 413, 679 A.2d 987 (1996). "Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of her rights because of lack of funds." (Internal quotation marks omitted.) *Koizim* v. *Koizim*, 181 Conn. 492, 501, 435 A.2d 1030 (1980).

General Statutes § 46b-62, which governs the award of counsel fees in dissolution proceedings, provides in relevant part that "the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities

and the criteria set forth in section 46b-82. . . ." The criteria set forth in General Statutes § 46b-82 include "the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . ." In awarding attorney's fees under § 46b-62, the court is not obligated to make express findings on each of the statutory criteria. *Bee* v. *Bee*, 79 Conn. App. 783, 790, 831 A.2d 833, cert. denied, 266 Conn. 932, 837 A.2d 805 (2003). "An abuse of discretion in granting the counsel fees will be found only if this court determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Papa* v. *Papa,* 55 Conn. App. 47, 57, 737 A.2d 953 (1999).

Ordinarily, when the court awards counsel fees pursuant to § 46b-62, its discretion is rarely disturbed. *Albrecht* v. *Albrecht,* 19 Conn. App. 146, 158, 562 A.2d 528, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989). When, however, the parties have provided for the payment of counsel fees in a marital agreement, such as a prenuptial agreement or separation agreement, the court must rely on the relevant provisions of that agreement when ruling on a request for such fees. See *Goold* v. *Goold,* 11 Conn. App. 268, 288, 527 A.2d 696 (parties' separation agreement provided for payment of counsel fees), cert. denied, 204 Conn. 810, 528 A.2d 1156 (1987); see also *Albrecht* v. *Albrecht,* supra, 158 (same).

In this case, the prenuptial agreement makes clear that each party is responsible for his or her own attorney's fees except that, pursuant to paragraph thirty-two, when either party initiates litigation with respect to the agreement, the successful party is entitled to reasonable attorney's fees as fixed by the court. Paragraph twelve provides in relevant part: "In the event

that the contemplated marriage of the parties hereto shall end in divorce . . . the parties hereto agree . . . [that] [e]ach party shall be responsible [for] his or her own legal fees and expenses . . . ." That provision precludes an award of attorney's fees to defend an appeal. We reject the plaintiff's contention that paragraph twelve does not apply to legal fees and expenses related to an appeal. We conclude that the court abused its discretion by not adhering to the relevant provisions of the agreement when ruling on the plaintiff's motion for counsel fees pending the appeal.

"Normally, when a portion of the court's financial order is found to be flawed, we return the matter to the trial court for a new hearing on the ground that in marital dissolution jurisprudence, financial orders often are interwoven." *Rosato* v. *Rosato*, 77 Conn. App. 9, 20, 822 A.2d 974 (2003). "[O]ur courts have utilized the mosaic doctrine as a remedial device that allows reviewing courts to remand cases for reconsideration of all financial orders . . . ." *Casey* v. *Casey*, 82 Conn. App. 378, 389 n.9, 844 A.2d 250 (2004). "Every improper order, however, does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors." *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999). Because we conclude that the award of counsel fees is severable from the other financial orders, it is not necessary to remand the case for reconsideration of the other financial orders. See *Grimm* v. *Grimm*, 82 Conn. App. 41, 56, 844 A.2d 855, cert. granted on other grounds, 270 Conn. 902, 903, 853 A.2d 519 (2004).

The judgment is reversed only as to the award of attorney's fees to the plaintiff and the case is remanded with direction to deny the plaintiff's motion for attor-

ney's fees. The judgment is affirmed in all other respects.

In this opinion DRANGINIS, J., concurred.

BERDON, J., dissenting in part and concurring in part. I agree with part IV of the majority opinion with respect to the award of attorney's fees to the plaintiff, Paulette Montoya, in order to defend this appeal. Because those fees were specifically prohibited by the prenuptial agreement (agreement), the reversal of such an award was proper. Our agreement, however, ends at that point. For the reasons set forth herein, I would reverse the entire judgment of the trial court and remand the case for a new trial.

The trial court found that the agreement was drafted by the attorney for the defendant, Fred Montoya, and, as a result, the court construed the agreement in favor of the plaintiff. Indeed, the court underscored the importance of this construction by stating that it *"considered a significant factor in its decision* the fact that the [agreement] was drafted by the attorney for the [defendant]." (Emphasis added.) In considering that factor, the court ignored paragraph thirty-four of the agreement, which provides: "The parties acknowledge that this . . . [a]greement is a document which has been negotiated by both parties and the parties agree that *for purposes of construction neither party is deemed to be the draftsman thereof."* (Emphasis added.) The decisive factor in this case is the construction of the agreement.

The majority shrugs off that provision of construction in the agreement by pointing out that the trial court also provided other bases for its decision. Specifically, the majority relies on the trial court's finding that it " 'presume[d] that the parties understood the meaning and intended the consequences of their words.' " In

other words, the majority comes to its conclusion on the basis of the plain language of the agreement and that there were no "tiebreakers."[1] There were, however, "tiebreakers." For example, as the majority concedes, "[o]nce again, we note that we have considered the court's construction, the relevant provisions and the evidence regarding the parties' intent. Although we conclude that the court's construction was proper, we note that it was not the only construction possible." It becomes very obvious that the trial court, when construing the agreement, did, in fact, consider as "a significant factor in its decision" its finding that the attorney for the defendant drafted the agreement.

The majority continuously underscores the importance of the trial court's interpretation of the agreement. By way of further example, the majority writes that "[t]he court expressly recognized the ambiguity caused by paragraphs eight and fourteen and attempted to 'give meaning and effect' to the agreement by 'resolv[ing] the apparent conflict between [them] . . . .' " Simply put, that is a construction of an "ambiguity in the contract language," which the trial court construed against the defendant, ignoring the fact that the agreement states "that for purposes of construction neither party is deemed to be the draftsman [of the agreement]."

The majority also suggests that we can ignore the fact that the trial court conceded that it gave significant weight to the claim that the defendant drafted the

---

[1] If there were no "tiebreakers" and the plain language of the agreement was to be applied, the appropriate standard of appellate review requires, as the majority concedes, that we must determine on appeal the intent of the parties from the four corners of the agreement because it is a question of law requiring plenary review. *Issler* v. *Issler*, 250 Conn. 226, 235–36, 737 A.2d 383 (1999). In other words, it cannot be held for one purpose that there were "tiebreakers" and for another purpose that there were no "tiebreakers." Indeed, as the majority concedes throughout its opinion, the court did construe the agreement, and it obviously had in mind that the agreement was drafted by the defendant and therefore must be construed against him.

agreement because the defendant failed to seek an articulation. The simple answer is that an articulation would not produce anything other than the dictionary definition of "significant," to wit: "Important, weighty, notable . . . ." Webster's Third New International Dictionary (1966).

Furthermore, even if we surmount the foregoing and construe the agreement against the defendant, we should still reverse the court's judgment. For example, the agreement provides that only "marital" property shall be divided equally. Marital property is defined in the agreement as the appreciation of the parties' assets during the marriage and specifically excludes earned income received *before* or *during* the marriage.[2] Indeed, the defendant testified, without contradiction, that prior to the marriage, the parties discussed that their retirement accounts and income derived therefrom would remain separate property. The retirement accounts of the defendant are clearly earned income and, pursuant to the agreement, the trial court should not have identified them as maritial property as it did.

The judgment of the trial court should be reversed and the case remanded for a new trial. Accordingly, I respectfully concur in part and dissent in part.

---

[2] The agreement provides in paragraph fourteen: "All property received by a party as compensation for his or her personal services, skill or effort (*whether received before or during the marriage of the parties hereto*) shall be and remain the separate property of the party receiving such property. All property received by a party as gifts, bequests, trust distributions or inheritances (whether received before or during the marriage of the parties hereto) shall be and remain the separate property of the party receiving the property." (Emphasis added.)