# WILLIAM RAVEIS REAL ESTATE, INC. *v.* NEWTOWN GROUP PROPERTIES LIMITED PARTNERSHIP ET AL.
## (AC 26368)

Schaller, DiPentima and Hennessy, Js.

Argued February 7—officially released June 6, 2006

*Mark J. Kovack*, for the appellant (plaintiff).

*Michael C. Jankovsky*, for the appellees (defendants).

*Opinion*

SCHALLER, J. This appeal arises from a breach of contract action in which the plaintiff, William Raveis Real Estate, Inc., sought to recover a real estate broker's commission in connection with commercial leases entered into by "Time-Warner, Inc. and/or its subsidiaries and/or MSL, Inc.,"[1] as tenant and the defendant Newtown Group Properties Limited Partnership (Newtown Group)[2] as landlord. After a trial to the court, judgment was rendered in favor of the plaintiff. The plaintiff appeals from the judgment, claiming that the court improperly determined the amount of its commission.[3] We affirm the judgment of the trial court.

The following facts, as found by the court in its memorandum of decision, are pertinent to our review. "The starting point for this case is the listing agreement dated February 1, 1996, which was prepared by the defen-

[1] As stated by the trial court in its memorandum of decision, "[t]he parties agree that the latter reference is to Martha Stewart Living, Inc."

[2] The plaintiff also named as a defendant Saugatuck Group Property Management, Inc., a general partner of Newtown Group. We refer in this opinion to Newtown Group and Saugatuck Group as the defendants and, where appropriate, individually by name.

[3] In response, the defendants assert that the court improperly (1) determined that the plaintiff was entitled to a commission, (2) failed to conclude that the plaintiff's claim was barred by the applicable statute of limitations and (3) rejected its claim that the plaintiff was not authorized to lease the subject property to tenants who were not identified in their agreement. To the extent that the defendants attempt to raise issues that attack the judgment, we decline to address the issues because the defendants failed to file a cross appeal. Practice Book § 61-8; see also *Board of Police Commissioners* v. *White*, 171 Conn. 553, 557, 370 A.2d 1070 (1976); *Wesleyan University* v. *Rissil Construction Associates, Inc.*, 1 Conn. App. 351, 355, 472 A.2d 23, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984).

dants. This agreement was between Newtown Group, as owner-lessor of 19 Newtown Turnpike, and the plaintiff as broker. Newtown Group agreed to pay a commission if the property, described as consisting of approximately 15,600 square feet, was leased to 'Time-Warner, Inc. and/or its subsidiaries and/or MSL, Inc.' . . . The agreement was to pay the plaintiff 5 percent of gross base rental for the original lease and 2.5 percent on 'first renewal.'[4] The agreement also provided that if the lease was renewed beyond the original term, the lessor would pay the broker a commission 'based on the aggregate rental for the renewal.' The agreement also refers to commissions due on 'renewal of a lease or a lease of additional space.'

"About six weeks later, on or about March 6, 1996, through the efforts of Susan Warburg, a real estate salesperson with the plaintiff, Newtown Group executed a lease with Time Publishing Ventures, Inc., a subsidiary of Time-Warner, Inc. The lease was for five years to begin July 1, 1996, and involved 16,472 square feet for a television studio as well as for an office and kitchen. The lease gave the lessee the right to expand into 5628 square feet of additional space. Newtown Group paid the plaintiff a commission of approximately $72,000.

"On August 1, 1996, Newtown Group entered into a second lease involving the subject premises. This lease was with Martha Stewart Living Omnimedia, LLC, and was for five years ending on June 30, 2001, the same expiration date as the original lease. This second lease also resulted in the tenant exercising Time Publishing Ventures' right to expand into the additional 5628 square feet mentioned in the original lease and was for the same purpose as the first lease, a television studio, office and kitchen.

---

[4] As we note in this opinion, the agreement also provided: "Zero percent (0%) of gross base rental payable on any renewal thereafter."

"On or about August 14, 1997, Newtown Group entered into another or third lease of the subject premises, again expiring on June 30, 2001, and again with Martha Stewart Living Omnimedia, LLC, as tenant. This lease added 8423 square feet of rental space and represented the balance of the building for a total lease of approximately 30,500 square feet.

"On or about October 1, 2000, a new lease was executed with Martha Stewart Living Omnimedia, Inc., not the limited liability corporation, as the tenant, extending the term for five more years to June 30, 2006. The lease was for the same purposes as the previous leases."

The plaintiff sought a commission from the defendants pursuant to the agreement for the subsequent leases and rental of additional space in the building. The defendants refused to pay any additional commissions. The plaintiff then brought an action in the Superior Court against the defendants, alleging (1) breach of contract, (2) equitable estoppel and (3) ratification. Following a trial to the court, the court found in favor of the plaintiff on the breach of contract counts.[5] The court concluded that the plaintiff was entitled to a commission on the basis of the "first renewal" for additional space leased pursuant to the lease dated August 1, 1996, and awarded $11,637.06. The court determined that the plaintiff was "due 2.5 percent of the gross base rental on this first renewal, which was for the original 16,472 square feet, plus the new 5628 square feet, for a total of 22,100 square feet. The gross base rental was $5393.50 for the first seven months, and thereafter $8911 for the remaining forty-eight months of the lease, which totals

[5] The court did not decide the remaining four counts. The court found in favor of the plaintiff on the breach of contracts count, thereby eliminating the need to decide the remaining issues, as they presented alternative bases for recovery. See *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 88–89, 873 A.2d 929 (2005).

$465,482.50, and the plaintiff is entitled to 2.5 percent of that amount, or $11,637.06." This appeal followed.

On appeal, the plaintiff raises a litany of claims that boil down to a single dispositive issue, namely, whether the court properly interpreted the lease dated August 1, 1996, for additional space as constituting the first renewal and extension of the initial lease, thereby eliminating any additional commissions for future renewals.[6]

The plaintiff's claim raises an issue of contract interpretation, for which our standard of review is well established. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Hanks* v. *Powder Ridge Restaurant Corp.*, 276 Conn. 314, 322, 885 A.2d 734 (2005).

"A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties [to a contract] is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A

---

[6] The plaintiff also contends that the court improperly calculated the amount in damages when it (1) failed to award the plaintiff a commission for the second lease of additional space, (2) failed to award the plaintiff a commission on the basis of the gross rent payable under the first renewal of the lease and (3) based its calculations on only one of the leases for additional space. As our resolution of the plaintiff's lease interpretation issue is dispositive, we need not address these claims.

court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 498, 746 A.2d 1277 (2000). "[C]ourts do not unmake bargains unwisely made. Absent other infirmities, bargains moved on calculated considerations, and whether provident or improvident, are entitled nevertheless to sanctions of the law. . . . Although parties might prefer to have the court decide the plain effect of their contract contrary to the agreement, it is not within its power to make a new and different agreement . . . ." (Internal quotation marks omitted.) Id., 505–506. As stated by our Supreme Court, "a presumption that the language used is definitive arises when . . . the contract at issue is between sophisticated parties and is commercial in nature." *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 670, 791 A.2d 546 (2002).

With these principles in mind, we turn to the plaintiff's appeal. At the outset, we note that the parties do not dispute that the renewal clause is not ambiguous. The parties also have not characterized any other provision of the agreement as ambiguous. Its construction, therefore, is a question of law that requires plenary review. See *Issler* v. *Issler*, 250 Conn. 226, 235–36, 737 A.2d 383 (1999). "Under plenary review, we must decide whether the trial court's conclusions of law are legally and logically correct and find support in the record." *Montoya* v. *Montoya*, 91 Conn. App. 407, 416, 881 A.2d 319, cert. granted on other grounds, 276 Conn. 916, 888 A.2d 85 (2005).

We begin by examining the relevant language of the agreement. The agreement contained a provision for commissions that included a renewal clause. The commission provision as set forth in paragraph five of the agreement provides: "COMMISSION: [Newtown Group]

agrees that it shall pay [the plaintiff] the following commission if during the term of this Agreement or within one (1) month from the end of said term, the Property is leased to Time Warner and/or its subsidiaries and/or MSL, Inc. The commission shall be calculated as follows:

"Five percent (5%) of gross base rental payable on original term.

"Two and one-half percent (2.5%) of gross base rental payable on first renewal.

"Zero percent (0%) of gross base rental payable on any renewal thereafter."

The agreement further provides in paragraph seven: "RENEWAL OR EXTENSION OF LEASES: If a lease is renewed so as to extend the original term, to the extent a commission is not paid from security deposits received by [Newtown Group, Newtown Group] shall pay [the plaintiff] at the time of [Newtown Group's] receipt of gross base rent for such renewal based on the aggregate rental for the renewal."

Finally, paragraph nine of the agreement provides in relevant part: "TIME OF PAYMENT: . . . Commissions for renewal of a lease or a lease of additional space shall be paid in full on the execution and delivery of the agreements formalizing the transaction."

The court found that the plaintiff was entitled to a commission for its initial lease dated March 6, 1996, which was paid previously by Newtown Group. Relying on the language contained in paragraph nine of the agreement, the court construed the renewal clause as applying to either the first "renewal of a lease or a lease of additional space . . . ." On the basis of that determination, the court concluded that the *first renewal* was the lease dated August 1, 1996, which was for the same use and term as the first lease, but

expanded the amount of leased square footage from 16,472 square feet to 22,100 square feet.[7]

The plaintiff asks us to read the provisions of the agreement in isolation from one another by interpreting the clause "[c]ommissions for renewal of a lease or a lease of additional space" as creating an additional right to a commission for subsequent leases for renewal and additional space beyond that of the "first renewal." That we cannot do, as we are bound to read the agreement as a whole. See *Levine* v. *Advest, Inc.*, 244 Conn. 732, 753, 714 A.2d 649 (1998). A firmly established principle of contract construction is that "[t]he individual clauses of a contract . . . cannot be construed by taking them out of context and giving them an interpretation apart from the contract of which they are a part. . . . A contract should be construed so as to give full meaning and effect to *all of its provisions* . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id. The plaintiff's proposed interpretation directly conflicts with the renewal clause set forth in paragraph five of the agreement establishing a right to a commission for the first renewal and plainly stating that no commission would be due "on any renewal thereafter."

After concluding that the lease for additional space dated August 1, 1996, was the first renewal, the court then calculated the amount of the plaintiff's commission on the basis of 2.5 percent of the gross base rental of $465,482.50, for an award of $11,637.06.[8] Because the agreement plainly states that no commission was payable on any subsequent renewals, the court declined to award additional commissions for the subsequent

---

[7] The lease also changed the name of the tenant from Time Publishing Ventures, Inc., to Martha Stewart Living Omnimedia, LLC. The court, however, found that the mere change of name did not alter the terms of the agreement.

[8] We note that neither party disputes that mathematical calculation.

leases between the parties for renewal and additional space. On the basis of our review of the relevant language of the agreement and the subsequent leases for renewal and for additional space, we conclude that the court's conclusions are both legally and logically correct and adequately supported by the factual record.

The judgment is affirmed.

In this opinion the other judges concurred.