PAULETTE MONTOYA *v.* FRED MONTOYA
(SC 17535)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued September 20—officially released December 5, 2006

*Steven D. Ecker*, for the appellant (defendant).

*Samuel V. Schoonmaker IV*, with whom, on the brief, were *Jill H. Blomberg* and *Peter M. Bryniczka*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The defendant, Fred Montoya, appeals, following our grant of certification,[1] from the judgment of the Appellate Court affirming in part and reversing in part the trial court's financial orders in its judgment

---

[1] We granted the defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court improperly affirm the trial court's judgment based on its improper application of the prenuptial contract?" *Montoya* v. *Montoya*, 276 Conn. 916, 888 A.2d 85 (2005).

dissolving his marriage to the plaintiff, Paulette Montoya. *Montoya* v. *Montoya*, 91 Conn. App. 407, 438–39, 881 A.2d 319 (2005). The defendant claims that the Appellate Court improperly affirmed the trial court's application of the parties' premarital agreement because the trial court improperly: (1) considered the identity of the drafter of that agreement in construing it, despite a provision therein prohibiting such consideration; (2) calculated the appreciation of assets subject to distribution as marital property; (3) compared gross asset valuation to net asset valuation in calculating the net appreciation of assets under the agreement; and (4) awarded only $15,000 in attorney's fees to the defendant.[2] We conclude that the Appellate Court properly upheld the $15,000 award. We also conclude, however, that the trial court improperly considered the identity of the drafter of the agreement in construing it, so that a new hearing is required with respect to the remaining financial issues. Accordingly, we reverse the judgment of the Appellate Court in part.

The record and the Appellate Court opinion reveal the following relevant facts and procedural history. The parties were married in 1995, and thereafter lived together for less than six years. It was the second marriage for the plaintiff and the third marriage for the defendant, and both had grown children from their prior marriages. They had signed a premarital agreement (agreement) on June 17, 1995, a few hours before they were married. Both parties were represented by counsel during the drafting of the agreement and the final

---

[2] The Appellate Court also reversed the trial court's postjudgment award of $5000 in attorney's fees to the plaintiff for defending against the defendant's appeal based on a provision of the agreement expressly requiring that each party pay his or her own attorney's fees unless those fees were incurred in defending the validity of the agreement. *Montoya* v. *Montoya*, supra, 91 Conn. App. 436–39. The plaintiff has not appealed from that ruling.

agreement "was the result of a vigorous and contentious negotiation between the parties . . . ."[3] Id., 409–10.

"On April 12, 2001, the plaintiff filed a complaint seeking dissolution of the marriage. In May, 2002, the court declared a mistrial in the first dissolution trial due to problems with the plaintiff's financial affidavit. On March 4, 2003, after hearing testimony over several days, the court, *Shay, J.,* rendered judgment ordering the marriage dissolved and made certain financial orders and property divisions. In its memorandum of decision, the court found that the marriage of the parties had broken down irretrievably and that both parties had contributed to the breakdown. Turning to the agreement, the court upheld the [agreement's] choice of law provision and applied New York law because it found no evidence of misrepresentation, fraud or undue influence underlying the choice of law provision. The court then concluded that under New York law, contrary to the plaintiff's argument, the agreement was valid and enforceable because it was in writing, subscribed to by the parties, acknowledged and was not unconscionable at the time of entry of final judgment or procured by fraud, deception or undue influence." Id., 412–13. The plaintiff has not challenged the trial court's conclusion that the agreement was valid and enforceable under New York law.

Before it properly could issue its financial orders, the trial court needed to construe certain conflicting provisions in the agreement that related to the distinc-

---

[3] The contentiousness resulted in the defendant calling off the wedding two days before it occurred because he had refused to agree to certain terms the plaintiff was demanding. The plaintiff ultimately "had a change of heart" and signed the agreement on June 17, 1995, without at least one change she had requested, namely, a $200,000 guaranteed payment in the event of divorce. This contentiousness and the timing of the signing were the primary bases of the plaintiff's challenge to the validity of the agreement before the trial court. The trial court held the agreement to be valid and enforceable, and the plaintiff has not appealed from that ruling.

tion between marital property and separate property. Under one provision of the agreement, marital property included the appreciation of some separately owned assets, and was to be distributed equally in the event of dissolution; under another provision, however, separate property and any appreciation thereof was not subject to distribution. In sum, the dispute between the parties centered on the definitions of marital and separate property contained in several conflicting paragraphs of the agreement.[4] The defendant claimed that under the

---

[4] "Paragraph seven provides in relevant part that each of the parties 'is the owner of separate property, which is specifically enumerated and described on Schedules "C" and "D" [which are the parties' respective premarital net worth statements]. . . . *Any assets obtained by either party as a consequence of the use, investment, reinvestment or any transfer of any portion of his or her separate property, and any income therefrom, and any appreciation in the value thereof, shall remain part of his or her separate property and separate estate.* It is specifically agreed by and between the parties that such property shall remain the sole and exclusive separate property of the party who is the owner thereof, and such party shall be solely entitled to make any determinations relative to the retention, sale, mortgaging or other disposition thereof, free and clear of any claim or control of the other.'

"Paragraph eight provides in relevant part: 'In the event that the contemplated marriage of the parties hereto shall end in divorce . . . *separate property shall be valued at not less than the values . . . on Schedules "C" and "D" and shall be appraised at the time of such divorce* . . . in order to determine the appreciation and/or depreciation of each item of such separate [property]. *The appreciation, if any, shall constitute marital property . . . [to] be divided between the parties equally.* In the event that there shall be a depreciation in the value of such separate property, then the amount of such depreciation shall constitute a credit as against the total value of the marital property, running to the benefit of the owner of such depreciated separate property. Subject to the foregoing . . . in the event that the parties shall become divorced . . . each party shall retain such separate property.'

"Paragraph nine provides in relevant part: 'Subject to the terms of this Agreement, each party hereto shall during his or her lifetime keep and retain sole ownership, control and enjoyment of all property which is his or her separate property under the terms of this Agreement . . . .'

"Paragraph ten provides in relevant part: '[E]ach of the parties shall have the absolute right to manage, dispose of, or otherwise deal with any property now separately owned, or hereafter separately acquired, in any manner whatsoever.' . . .

agreement, all separately earned income[5] remained separate property and could never become marital property. The plaintiff countered that when separately earned income, which was separate property, was added to the assets listed in the parties' statements of premarital net worth, that income then became marital property. The trial court ultimately agreed with the plaintiff's interpretation of the agreement.

"[T]he court concluded that [the agreement] 'very clearly calls for an equal division of the net appreciation in value of the assets originally disclosed . . . and this the court proposes to accomplish.' The court set forth the following explanation of its construction of the agreement in a lengthy footnote: 'In order to give meaning and effect to the agreement, the court has read it as a whole, in particular [paragraphs] eight, fourteen and seventeen. The court has considered a significant factor in its decision the fact that the document was drafted by the attorney for the [defendant]. In addition, the court presumes that the parties understood the meaning and intended the consequences of their words.

"Paragraph fourteen provides in relevant part: '*All property received by a party as compensation for his or her personal services, skill or effort* (whether received before or during the marriage of the parties hereto) *shall be and remain the separate property* of the party receiving such property. . . .'

"Paragraph seventeen provides in relevant part: '*Any assets obtained by either party as a consequence of the use, investment, reinvestment or any transfer of any portion of his or her separate property, and any income therefrom, and any appreciation in the value thereof shall remain part of his or her separate property* and separate estate.'

"Paragraph eighteen provides in relevant part: ' "*Marital property*" *includes all property acquired by either party after the date of the marriage by the use of any economic resources not defined herein as being "separate property,"* and all property placed in joint names and any other property specifically identified by the parties as being joint property.' " (Emphasis added.) *Montoya* v. *Montoya,* supra, 91 Conn. App. 410–12.

[5] The parties agreed that "earned income" included both salary and other forms of compensation for employment, such as pensions and profit sharing plans.

The court has resolved the apparent conflict between the legal consequences which flow from the implementation of those provisions of the agreement relating to the terms "separate property" and those relating to "appreciation" in value (which is considered "marital property") with regard to individual assets, by finding that the clear meaning and intent of the parties as to the former relates to title and possession of "separate property" at the beginning and end of the marriage, while the term "appreciation" embodies the intent of the parties to recognize and quantify their respective tangible and intangible contributions to the marriage during its term, and to provide a rational method of dividing the same.'

"The court concluded that 'after considering all of the provisions of the agreement as a whole . . . each party is entitled to one-half' of the appreciation in value of the parties' separate property. The court found that the combined appreciation of the parties' separate property was $828,689. The court divided this sum by two and then subtracted $79,191, the amount that the plaintiff's property had appreciated. After those calculations, the court concluded that the defendant owed the plaintiff $335,154. Pursuant to paragraph thirty-two, the court also concluded that because the plaintiff had challenged the validity of the agreement, the defendant, as the successful party, was entitled to reasonable attorney's fees as fixed by the court. The court then found that the defendant's reasonable attorney's fee attributable to the plaintiff's challenge was $15,000, which was to be deducted from the amount owed by the defendant. Accordingly, the court ordered the defendant to pay the plaintiff the sum of $320,154." Id., 413–14.

The defendant appealed, claiming that the trial court "improperly applied the terms of the parties' prenuptial agreement . . . ." Id., 409. The Appellate Court affirmed the trial court's judgment in all respects rele-

vant to this appeal; see footnote 2 of this opinion;[6] and this certified appeal followed. See footnote 1 of this opinion.

We first set forth the appropriate standard of review. As the Appellate Court correctly stated, "to determine the appropriate standard of review for each of the claims that challenge the court's construction of the agreement, we must first ascertain whether the relevant language in the agreement is ambiguous."[7] *Montoya* v. *Montoya*, supra, 91 Conn. App. 417, citing *Smithfield Associates, LLC* v. *Tolland Bank*, 86 Conn. App. 14, 19, 860 A.2d 738 (2004), cert. denied, 273 Conn. 901, 867 A.2d 839 (2005). "If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review." *Montoya* v. *Montoya*, supra, 416; *Issler* v. *Issler*, 250 Conn. 226, 236, 737 A.2d 383 (1999). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks

---

[6] Judge Berdon concurred with the Appellate Court majority's reversal of the award of attorney's fees to the plaintiff, but dissented as to the remainder of the opinion. *Montoya* v. *Montoya*, supra, 91 Conn. App. 439 (*Berdon, J.,* dissenting in part and concurring in part). He would have reversed and remanded the case for a new trial based on his conclusion that the trial court improperly used the identity of the drafter as a "tiebreaker" in construing the agreement. Id., 439–40 (*Berdon, J.,* dissenting in part and concurring in part). Judge Berdon also would have reversed the trial court's judgment based on its inclusion of retirement accounts within marital property subject to distribution. Id., 441 (*Berdon, J.,* dissenting in part and concurring in part).

[7] Although the agreement's choice of law provision dictates that the substance of the contract will be analyzed according to New York law, procedural issues such as the applicable standard of review are governed by Connecticut law. See *Clisham* v. *Board of Police Commissioners*, 223 Conn. 354, 370, 613 A.2d 254 (1992).

omitted.) *Pesino* v. *Atlantic Bank of New York*, 244 Conn. 85, 92, 709 A.2d 540 (1998). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) Id.

The trial court's decision to enforce the choice of law provision of the agreement stands unchallenged, so, like the Appellate Court, "we will apply New York law to the substantive claims in this case, including those concerning contract construction." *Montoya* v. *Montoya*, supra, 91 Conn. App. 415. "Duly executed prenuptial agreements are accorded the same presumption of legality as any other contract . . . . Thus, as with all contracts, we assume a deliberately prepared and executed agreement reflects the intention of the parties. Further, while we must be concerned with what the parties intended, we generally may consider their intent only to the extent that it is evidenced by their writing . . . ." (Citations omitted.) *Bloomfield* v. *Bloomfield*, 97 N.Y.2d 188, 193, 764 N.E.2d 950, 738 N.Y.S.2d 650 (2001). "Unless the court finds ambiguity, the rules governing the interpretation of ambiguous contracts do not come into play . . . ." (Citations omitted.) *R/S Associates* v. *New York Job Development Authority*, 98 N.Y.2d 29, 33, 771 N.E.2d 240, 744 N.Y.S.2d 358 (2002). "We have long adhered to the 'sound rule in the construction of contracts, that where the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language' . . . ." (Citations omitted.) Id., 32, quoting *Springsteen* v. *Samson*, 32 N.Y. 703, 706 (1865). With regard to the defendant's first claim of impropriety, which we find dispositive of this

appeal, the standard of review is plenary because the governing provision of the agreement is unambiguous.[8]

## I

Although the Appellate Court's opinion discussed in detail many provisions of the agreement; see *Montoya* v. *Montoya*, supra, 91 Conn. App. 410–12; we conclude that one paragraph is dispositive of this appeal. The defendant's claim pits that paragraph of the agreement against a sentence in the trial court's memorandum of decision. Specifically, paragraph thirty-four of the agreement provides: " 'The parties acknowledge that this Ante-Nuptial Agreement is a document which has been negotiated by both parties and the parties agree that for purposes of construction neither party is deemed to be the draftsman thereof.' " Id., 412. In a footnote in its memorandum of decision explaining its interpretation of the agreement, however, the trial court wrote: " 'The court has considered a *significant factor* in its decision, the fact that the document was drafted by the attorney for the [defendant].' " (Emphasis added.) Id., 413. The trial court's analysis, therefore, is expressly at odds with paragraph thirty-four of the agreement, which "[has] a definite and precise meaning

---

[8] The Appellate Court applied the "clearly erroneous" standard of review based on its conclusion that the trial court had relied on evidence outside of the language within the four corners of the agreement to determine its meaning. *Montoya* v. *Montoya*, supra, 91 Conn. App. 418–19. Specifically, the Appellate Court cited the testimony heard by the trial court about the parties' intent with regard to "whether earned compensation in the form of pension and profit sharing plans and earned compensation subsequently used to make improvements to real estate were to be included as part of the appreciation of assets subject to distribution . . . ." Id., 418. Although that standard of review is appropriate with respect to the defendant's second claim of impropriety by the trial court, it is not applicable to the defendant's first claim of impropriety, which we find dispositive of this appeal. The language of the agreement is clear and explicit in its prohibition of consideration of the identity of the drafter for the purposes of construction. Because the language relevant to the defendant's first claim of impropriety is unambiguous, our review of that claim is plenary.

. . . concerning which there is no reasonable basis for a difference of opinion . . . ." (Citations omitted.) *Breed* v. *Ins. Co. of North America*, 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 413 N.Y.S.2d 352 (1978).

The defendant claimed before the Appellate Court that, "pursuant to paragraph thirty-four, it was improper for the court to find that the defendant was the drafter of the agreement." *Montoya* v. *Montoya*, supra, 91 Conn. App. 420. The Appellate Court concluded that, "[a]lthough we agree with the defendant that the *unambiguous language of the agreement* made it unnecessary, if not improper, for the court to make a factual finding regarding which party drafted the agreement, we do not agree that the finding requires reversal of the judgment."[9] (Emphasis added.) Id., 422. We disagree with that conclusion, and therefore, we reverse the judgment of the Appellate Court with respect to this issue.

Having reviewed the record, we conclude that the trial court's reliance on its finding that the defendant's attorney drafted the agreement infected its entire decision. Although it is impossible to determine precisely how much weight the trial court accorded the identity of the drafter in its construction and application of the agreement, by its own words, it was a *"significant"* factor. (Emphasis added.) Id., 413. That significance is further highlighted by the trial court's reference to the

---

[9] The Appellate Court also implied that the defendant should have sought an articulation of the trial court's reasoning based on the language of footnote 1 of its memorandum of decision. *Montoya* v. *Montoya*, supra, 91 Conn. App. 422 ("The defendant did not request an articulation of the court's statement. On the basis of the court's statement alone, we cannot assume that the court's improper finding prejudiced the defendant."). We disagree, because, as Judge Berdon stated, "an articulation would not produce anything other than the dictionary definition of 'significant,' to wit: 'Important, weighty, notable . . . .' Webster's Third New International Dictionary (1966)." *Montoya* v. *Montoya*, supra, 441 (*Berdon, J.*, dissenting in part and concurring in part).

identity of the drafter three more times in its decision. On the basis of the trial court's own language, it is possible that not only was the identity of the drafter a significant factor, but it also may well have been the *determinative* factor in the trial court's finding as to the intent of the parties. The Appellate Court acknowledged that the trial court's language may have been an indication that the court had applied the rule of contra proferentem, which would have made the identity of the drafter the determining factor in its decision. *Montoya* v. *Montoya*, supra, 91 Conn. App. 420–21; see, e.g., *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 735, 873 A.2d 898 (2005) ("Where the language is unambiguous, we must give the contract effect according to its terms. . . . Where the language is ambiguous, however, we must construe those ambiguities against the drafter." [Citation omitted.]); see also *Connecticut Ins. Guaranty Assn.* v. *Fontaine*, 278 Conn. 779, 789 n.7, 900 A.2d 18 (2006) (Courts follow the rule of contra proferentem because "[t]he party who actually does the writing of an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests. . . . A further, related rationale for the rule is that [s]ince one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter." [Internal quotation marks omitted.]).

We acknowledge that the trial court was faced with "an agreement made ambiguous by inconsistent provisions." *Montoya* v. *Montoya*, supra, 91 Conn. App. 419. Paragraph thirty-four, however, was not one of those inconsistent provisions. It was, therefore, improper for the trial court to ignore the clear language of that provi-

sion in its construction of the rest of the agreement. Accordingly, the Appellate Court should have remanded the case to the trial court to make financial orders based on the agreement without consideration of the improper factor. The Appellate Court, therefore, improperly affirmed this aspect of the trial court's judgment.[10]

## II

We next address the defendant's claim that the trial court should have awarded him more than $15,000 in attorney's fees for defending the validity of the agreement.[11] We address this claim notwithstanding the fact that, generally, "[t]he issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Greco* v. *Greco*, 275 Conn. 348, 354, 880 A.2d 872 (2005). "Every improper order, however, does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors." *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999). As the Appellate Court noted, the trial court's award of attorney's fees to the defendant was

[10] Because we conclude that the trial court's improper consideration of the agreement's drafter requires new findings as to the parties' intent, we need not address the defendant's other claims of impropriety by the trial court in its financial orders that were the product of its construction of the agreement.

[11] We recognize that the attorney's fees issue may be outside the scope of the somewhat vague certified question in this case. See footnote 1 of this opinion. Because both parties have briefed the issue and it was addressed at oral argument before this court, however, we review it here. See, e.g., *Carpenter* v. *Commissioner of Correction*, 274 Conn. 834, 842 n.6, 878 A.2d 1088 (2005) ("[a]lthough this claim is outside the scope of the certified question, we review it in the interest of judicial efficiency"); *State* v. *Brown*, 242 Conn. 445, 447, 700 A.2d 1089 (1997) (court may address related claims not certified for review in interest of judicial economy).

not pursuant to a statutory property distribution scheme, but rather was controlled by the terms of the agreement governing challenges to its validity.[12] *Montoya* v. *Montoya*, supra, 91 Conn. App. 434. Specifically, the trial court's award of attorney's fees was based on paragraph thirty-two of the agreement, which provides: " 'In the event that either party initiates litigation against the other with respect to this Agreement, the successful party shall be entitled to receive, in addition to any award followed by any Court, the amount of reasonable attorney['s] fees fixed by the Court before [which] this litigation was initiated as an additional amount to be added to the judgment awarded to the successful party.' " Id., 412. The language of this provision makes it clear that the award of attorney's fees to the defendant for his successful defense of the plaintiff's challenge to the validity of the agreement is entirely severable and distinct from the other financial orders issued by the trial court.

Our examination of the record and briefs leads us to conclude that the issue was resolved properly in part III of the Appellate Court opinion. See id., 430–35. Because that opinion fully addresses all arguments raised with respect to this issue, we adopt it as a proper statement of the applicable law concerning this issue. It would serve no useful purpose for us to repeat the discussion

---

[12] This discrete contractual basis for the award of attorney's fees to the defendant removes it from the ambit of statutory financial awards wherein "[c]ourts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to the rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders . . . . Whether to allow counsel fees [under General Statutes § 46b-82], and if so in what amount, calls for the exercise of judicial discretion." (Citations omitted; internal quotation marks omitted.) *Grimm* v. *Grimm*, 276 Conn. 377, 397, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

contained therein. See *Commissioner of Labor* v. *C.J.M. Services, Inc.*, 268 Conn. 283, 295, 842 A.2d 1124 (2004). We, therefore, affirm the Appellate Court's conclusion that the $15,000 award in attorney's fees to the defendant by the trial court was not an abuse of discretion.

The judgment of the Appellate Court is affirmed with respect to the trial court's award of attorney's fees to the defendant; the judgment of the Appellate Court is reversed as to the remaining financial orders and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case for a new hearing on all other financial issues.

In this opinion the other justices concurred.