CELIN G. REIZFELD *v.* LEONARD C. REIZFELD
(AC 31075)

Gruendel, Beach and Borden, Js.

Argued November 10, 2010—officially released January 4, 2011

*Leonard C. Reizfeld*, pro se, the appellant-appellee (defendant).

*Kenneth A. Votre*, with whom, on the brief was *Michele D. Sensale*, for the appellee-appellant (plaintiff).

*Opinion*

GRUENDEL, J. The defendant, Leonard C. Reizfeld, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Celin G. Reizfeld, and entering related financial orders. On appeal, he claims that the court improperly (1) awarded the plaintiff attorney's fees, (2) deviated from the statutory child support guidelines, and (3) ordered that the plaintiff be allowed to reside in the defendant's home rent and expense free for approximately six months following the dissolution of the parties' marriage. The plaintiff cross appeals, claiming that the court improperly determined that the parties were bound by a valid and enforceable antenuptial agreement. With respect to the defendant's claims, we affirm in part and reverse in part the judgment of

the trial court. With respect to the plaintiff's cross appeal, we affirm the judgment of the trial court.

The following facts, as found by the court, and procedural history are relevant to the resolution of these appeals. On July 27, 1998, the parties executed an antenuptial agreement (agreement) "to fix and determine their respective rights in and to all property that the other may own or enjoy at the time of [their] marriage or thereafter . . . in the event of a dissolution of [their] marriage . . . ." Both parties were represented by counsel throughout the negotiation and drafting of the agreement, and both parties acknowledged that they were entering into the agreement "freely, voluntarily, and with full knowledge of [their respective rights]." At the time the agreement was executed, the parties had one three year old child, and the plaintiff was approximately eight months pregnant with their second child. Also at that time, the defendant was in possession of nearly $2.4 million in assets, while the plaintiff was in possession of approximately $4500 in assets. On August 13, 1998, the parties married in New Haven.

On October 11, 2006, the plaintiff commenced this dissolution action, claiming that the parties' marriage had broken down irretrievably. In addition to awards of periodic alimony and child support, the plaintiff sought an equitable distribution of the parties' assets. The defendant filed a special defense, claiming that the parties' rights upon dissolution of the marriage were governed exclusively by the agreement. The plaintiff filed an amended reply to the defendant's special defense, arguing that the agreement was unenforceable against her because it was unconscionable both when executed and at the time the defendant sought its enforcement. The matter was tried to the court over seven days in January and February, 2009. On May 4, 2009, the court rendered judgment dissolving the parties' marriage. In so doing, the court specifically found

that the agreement was enforceable and awarded the plaintiff alimony and child support,[1] as well as $7500 in attorney's fees and costs. Additionally, the court ordered that the plaintiff be allowed to reside in the defendant's home until September 1, 2009. These appeals followed.

On August 28, 2009, in a memorandum of decision, the court granted the plaintiff's postjudgment motion seeking additional funds from the defendant for attorney's fees to defend the appeal. In addition to ordering that the defendant pay the plaintiff $6000 to defend the appeal, the court also extended the time that the plaintiff be allowed to remain in the defendant's home until October 15, 2009. Thereafter, the defendant amended his appeal to include a challenge to this postjudgment ruling.

The defendant now claims that the court improperly awarded the plaintiff attorney's fees because the agreement precludes either party from seeking the payment of such fees from the other in the event of a dissolution action. The defendant also claims that the court improperly deviated from the statutory child support guidelines to the detriment of the parties' minor children and improperly ordered that the plaintiff be allowed to remain rent and expense free in the defendant's home for a period of six months following the dissolution of the parties' marriage. On cross appeal, the plaintiff claims that the court improperly concluded that the agreement was enforceable against her in light of its apparent unconscionability. We address the parties' claims in turn. Additional facts will be set forth as necessary.

---

[1] At the time that the court rendered judgment, the parties' minor children were fourteen years old and ten years old.

## I

## DEFENDANT'S APPEAL

### A

The defendant first claims that the court improperly awarded the plaintiff attorney's fees both in its initial May 4, 2009 financial orders and its subsequent August 28, 2009 postjudgment memorandum of decision. Specifically, the defendant maintains that the award of attorney's fees to either party in the context of a dissolution action is precluded by the language of the agreement, which the court found to be valid and enforceable. We agree.

The following additional facts and procedural history are relevant to the resolution of this claim. Nowhere in the parties' agreement is the issue of attorney's fees addressed directly. Rather, the issue is addressed implicitly by two separate provisions of the agreement—namely, paragraphs 5 and 10 (B). Paragraph 5 provides: "Neither of the parties shall seek, in any action for dissolution of marriage, payment for *liabilities* from the other." (Emphasis added.) Paragraph 10 (B) states: "The parties agree that in any [dissolution] action, neither [party] will ask for different or greater rights than those specified [in the agreement] and that each will abide with and be bound by the provisions of [the] [a]greement . . . ."

On June 12, 2009, the court granted in part the defendant's motion for articulation with respect to the "factual and legal basis for awarding the [p]laintiff attorney['s] fees and costs . . . ." In clarifying its ruling, the court referenced General Statutes § 46b-62[2] but

---

[2] General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities . . . ."

did not explain how § 46b-62 applied in light of the parties' agreement.[3] The defendant now argues that paragraphs 5 and 10 (B) operate to prohibit the award of attorney's fees and that the court improperly awarded the plaintiff attorney's fees notwithstanding its June 12, 2009 articulation. Specifically, the defendant maintains that, as to paragraph 5, the term "liabilities" encompasses attorney's fees, and, thus, the plaintiff is precluded from seeking the payment thereof. As to paragraph 10 (B), the defendant asserts that, because the agreement is silent as to the award of attorney's fees and because "neither [party may] ask for different or greater rights than those specified [in the agreement]," the plaintiff is further barred from seeking the payment of her attorney's fees. In response, the plaintiff counters that the meaning of the term "liabilities" in the agreement is ambiguous and undefined and should not be read to include attorney's fees, especially when the agreement is otherwise silent in this regard. Additionally, the plaintiff raises equitable challenges to the agreement's applicability on the issue of attorney's fees given the parties' grossly disproportionate financial positions.

Before addressing the merits of the parties' arguments, we begin with the applicable legal principles and standard of review governing our analysis. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably

---

[3] The court also referenced plaintiff's trial exhibit forty, which is the plaintiff's affidavit as to her attorney's fees, as well as the initial May 4, 2009 judgment and financial orders. Nonetheless, the court did not explain how either of these references supported its award of attorney's fees given the parties' agreement. Also, the record is devoid of any articulation as to the court's postjudgment award of appellate attorney's fees, though for purposes of this appeal, we presume that the court's justification for attorney's fees is identical for the award of both trial and appellate attorney's fees.

conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Elia* v. *Elia*, 99 Conn. App. 829, 831, 916 A.2d 845 (2007).

"An antenuptial agreement is a type of contract and must, therefore, comply with ordinary principles of contract law." *McHugh* v. *McHugh*, 181 Conn. 482, 486, 436 A.2d 8 (1980). Thus, as contracts, "antenuptial agreements are to be construed according to the principles of construction applicable to contracts generally. The basic purpose of [contract] construction is to ascertain and give effect to the intention of the parties." (Internal quotation marks omitted.) Id., 491. "If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms [contained therein]. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Citations omitted; internal quotation marks omitted.)

*Montoya* v. *Montoya*, 280 Conn. 605, 612–13, 909 A.2d 947 (2006).

We conclude that the term "liabilities," as contained in paragraph 5 of the parties' agreement, is unambiguous and includes within its "ordinary meaning" attorney's fees. *Montoya* v. *Montoya*, supra, 280 Conn. 612. As the plaintiff notes, "[p]renuptial agreements in Connecticut have been governed since October 1, 1995, by the Connecticut Premarital [Agreement] Act, [as codified in] General Statutes § 46b-36a et seq." The Connecticut Premarital Agreement Act does not define the terms "liable" or "liabilities." As our Supreme Court recently explained, "[w]hen a statute does not provide a definition, 'words and phrases . . . are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term.' . . . Webster's Third New International Dictionary defines 'liability' as 'something for which one is liable . . . as . . . an amount that is owed whether payable in money, other property, or services,' and defines 'liable' as 'bound or obligated according to law or equity . . . .' " (Citations omitted.) *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 633, 6 A.3d 60 (2010). Given this definition, we fail to see how attorney's fees, which are simply " 'an amount that is owed . . . payable in money' "; id.; to one's lawyer, are not within the plain meaning of "liabilities" as contained in paragraph 5 of the parties' agreement. Having found the parties' agreement valid and enforceable, the court was bound, as with any other contract, to give effect to the agreement " 'according to its terms' " as a manifestation of the parties' intent in entering the same. *Montoya* v. *Montoya*, supra, 612. This conclusion is consistent with the development of our law in dissolution actions involving enforceable antenuptial agreements. See *Crews* v. *Crews*, 295 Conn. 153, 169,

989 A.2d 1060 (2010) ("[w]hether provident or improvident, an [antenuptial] agreement moved on calculated considerations is entitled to the sanction of the law" [internal quotation marks omitted]); *Montoya* v. *Montoya*, supra, 613 ("as with all contracts, we assume a deliberately prepared and executed agreement reflects the intention of the parties [and] . . . we generally may consider [the parties'] intent only to the extent that it is evidenced by their writing" [internal quotation marks omitted]); *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999) ("[t]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words [of their agreement] and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract" [internal quotation marks omitted]); *McHugh* v. *McHugh*, supra, 181 Conn. 491 ("[w]here there is no ambiguity [in an antenuptial agreement] . . . there is no occasion for construction and the agreement will be enforced as its terms direct" [internal quotation marks omitted]). Further, the plaintiff's argument that equitable considerations of the parties' financial statuses provide an adequate basis for awarding the plaintiff attorney's fees is unpersuasive in this context, especially given the court's finding of the agreement's validity. See, e.g., *Friezo* v. *Friezo*, 281 Conn. 166, 199, 914 A.2d 533 (2007) ("[c]ontracting parties are normally bound by their agreements . . . irrespective of whether the agreements embodied reasonable or good bargains" [internal quotation marks omitted]).

Thus, because the court found that the parties' agreement was enforceable, and because we conclude that the term "liabilities" as used in paragraph 5 of the agreement includes attorney's fees, the plaintiff was precluded from seeking the payment of her attorney's

fees from the defendant.[4] By ordering the defendant to pay the trial attorney's fees of the plaintiff in the amount of $7500 and appellate attorney's fees in the amount of $6000, the court abused its discretion. We therefore reverse the judgment of the trial court with respect to the award of attorney's fees and remand the case with direction to amend the judgment to enter orders denying the plaintiff attorney's fees.

B

The defendant next claims that the court improperly deviated from the statutory child support guidelines. Specifically, the defendant argues that the court incorrectly calculated his child support obligation by assigning the plaintiff an actual gross weekly income of $150, rather than using the plaintiff's earning capacity of $500 in gross weekly income. The defendant also argues that the court incorrectly ordered that he be responsible for 70 percent of unreimbursed medical expenses and child care costs, given the court's determination that the plaintiff was obligated to pay 73 percent of such expenses as well as the parties' joint custody arrangement of their minor children. We disagree.

The following additional facts are relevant to the disposition of this claim. In calculating the defendant's child support obligation, the court completed two separate child support worksheets. On one of those worksheets, the court, utilizing the parties' financial affidavits, calculated the defendant's child support obligation using the plaintiff's actual gross weekly income, or $150. This calculation resulted in the defendant's presumptive child support obligation of $240 per week.[5]

---

[4] Given this conclusion, we need not address further the defendant's argument that paragraph 10 (B) of the parties' agreement also precludes the award of attorney's fees in this dissolution action.

[5] We note that this relatively modest amount is based on the court's acceptance of the defendant's claim in his financial affidavit that his net income totals $731 per week.

The court then prepared a second worksheet using the plaintiff's anticipated earning capacity of $500 in gross weekly income.[6] This calculation had the effect of reducing the defendant's child support obligation by $35 to a total of $205 weekly. Also on this second worksheet, the court noted that the plaintiff would be responsible for 73 percent of the unreimbursed medical expenses and child care costs, while the defendant would be responsible for 27 percent of such expenses. In its May 4, 2009 financial orders, the court set the defendant's child support obligation at $240 per week[7] and explained that it was "not [deviating] from the [child support] guidelines [notwithstanding] shared physical custody or . . . [the plaintiff's] earning capacity [because] . . . the [plaintiff] need[ed] time to get back into the workforce and find affordable housing for herself and the [parties'] children, [as well as] the significant disparity in assets [between the parties], the [defendant's] prior income levels and profession . . . and the best interest[s] of the [parties'] minor children . . . ." Additionally, in contrast to its worksheet notation, the court ordered that the defendant be responsible for 70 percent of the unreimbursed medical and child care costs. The court further explained that, although these assignments were a deviation from the presumptive percentages, they were warranted by the parties' disproportionate financial circumstances. The defendant now argues that the court improperly calculated his child support obligation on the basis of the plaintiff's actual gross weekly income, rather than the plaintiff's earning capacity. The defendant also argues that the court improperly ordered that he be responsible for 70 percent of the unreimbursed medical and child care costs, given the court's initial worksheet notation

---

[6] The court based this figure on its specific finding that the plaintiff's earning capacity was "at least" $26,000 per year.

[7] This amount was later reduced on November 12, 2009, to $120 by way of a stipulated agreement between the parties.

that the plaintiff was responsible for 73 percent of such expenses.

It bears repeating that "[i]n determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding on this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Buehler* v. *Buehler*, 117 Conn. App. 304, 317–18, 978 A.2d 1141 (2009).

Here, both parties presented extensive evidence over the course of a seven day trial as to their respective financial assets. Notably, the defendant's financial affidavit shows a net worth of approximately $706,000, while the plaintiff's financial affidavit discloses no significant asset base whatsoever. Moreover, the court found that the defendant was a successfully practicing attorney, with an annual gross income of more than $70,000 and "significant future opportunities to support himself and . . . increase his income . . . ." These findings were in stark contrast to the plaintiff's limited earning capacity and gross yearly income of only $7800. In light of this evidence, we cannot say that the court's findings and conclusions with respect to the defendant's child support obligation were clearly erroneous. Indeed, the defendant's argument that the court improperly deviated from the child support guidelines by using the plaintiff's actual gross income is misguided, as the

deviation would instead be in using the plaintiff's earning capacity. As such, the court's decision to adhere to the guidelines for purposes of calculating the defendant's child support obligation was supported by the evidence presented by both parties and did not constitute an abuse of discretion. See, e.g., *Wallbeoff* v. *Wallbeoff*, 113 Conn. App. 107, 108 n.1, 965 A.2d 571 (2009) ("[t]he current support, health care coverage contribution, and child care contribution amounts calculated [under the child support guidelines] . . . are presumed to be the correct amounts to be ordered" [internal quotation marks omitted]).

Additionally, the evidence provided ample support for the court to deviate from the presumptive percentages with respect to the minor children's unreimbursed medical and child care costs. As the court stated in its articulation, this deviation was based on "the [plaintiff's need] . . . to get back into the workforce and find affordable housing for herself and the [parties'] children, the significant disparity in [the parties'] assets, the [defendant's] prior income levels and profession . . . and the best interest[s] of the [parties'] minor children." See *Wallbeoff* v. *Wallbeoff*, supra, 113 Conn. App. 108 n.1 ("[t]he presumption regarding [the amount of health care expenses and child care costs] may be rebutted by a specific finding on the record that such amount would be inequitable or inappropriate in a particular case" [internal quotation marks omitted]). We find that the initial notation attributing the payment of 73 percent of these expenses to the plaintiff was merely a scrivener's error that was ultimately corrected by way of the court's May 4, 2009 financial orders. The record is replete with evidence sufficient to justify the court's financial orders, both with respect to the defendant's child support obligation, as well as the defendant's responsibility for unreimbursed medical expenses and child care costs. As such, the court did not abuse its

discretion in setting the defendant's child support obligation at $240 per week, nor did the court abuse its discretion by obligating the defendant to pay 70 percent of the unreimbursed medical and child care costs for the parties' minor children. Accordingly, the defendant's claim fails.

## C

The defendant's final claim is that the court improperly ordered that the plaintiff be allowed to remain in the defendant's home rent and expense free for a period of six months following the dissolution of the parties' marriage. Specifically, the defendant argues that the court's order in this regard constituted an additional award of alimony to the plaintiff and that the court failed to assign appropriately a value to the plaintiff's continued use and occupancy of the defendant's home. We disagree.

The following additional facts and procedural history are relevant to the disposition of this claim. In support of its May 4, 2009 financial orders, the court made a number of factual findings regarding the parties' property interests, including the family home located in Woodbridge. Importantly, the court found that the plaintiff had "no credible claim to any interest in the home," as it constituted a premarital asset of the defendant, and initially ordered that the plaintiff vacate the home by September 1, 2009. On May 7, 2009, the defendant filed a motion for articulation requesting that the court clarify the "factual and legal basis" for allowing the plaintiff to remain in the home until September 1, 2009, as well as whether this order constituted an additional award of alimony and, if so, the value thereof. On June 12, 2009, the court granted in part the defendant's motion for articulation and, on August 28, 2009, clarified its initial order in a memorandum of decision. As the court explained, the order allowing the plaintiff to

remain in the family home did not constitute an additional award of alimony, and the court went further in extending the time that the plaintiff be allowed to remain in the home until October 15, 2009. The defendant now claims that the court improperly ordered that the plaintiff be allowed to remain in the family home rent and expense free until October 15, 2009, particularly in light of the fact that the court found the home to belong "free and clear" to the defendant pursuant to the parties' agreement. Furthermore, the defendant maintains that the court improperly determined that the plaintiff's continued "use and occupancy" of the defendant's home did not constitute an additional award of alimony and failed to assign appropriately a value thereto.

Our review of the record discloses that at no time did the defendant offer any evidence from which the court could calculate the approximate value, if any, of the plaintiff's "use and occupancy" of the family home following the dissolution of the parties' marriage. Moreover, the parties' agreement is utterly silent as to how such a value would be calculated. Thus, assuming arguendo that the court's determination that the plaintiff's continued use of the family home did not constitute an additional award of alimony was improper, any such ruling would be harmless given the defendant's failure to provide an adequate evidentiary basis for the court to utilize in calculating the value of such an award. See *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 383, 999 A.2d 721 (2010) ("The harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . When judging the likely effect of such a trial court ruling, the reviewing court is constrained to make its determination on the basis of the printed record before it." [Internal quotation marks omitted.]). "Because it is the . . . appellant's responsibility to provide this court with an adequate record for review . . .

we will not remand a case to correct a deficiency the . . . appellant should have remedied" by presenting evidence to support his claims in the first instance. (Internal quotation marks omitted.) *Miller* v. *Miller*, 124 Conn. App. 36, 40, 3 A.3d 1018 (2010). Because the defendant failed to provide any evidence from which the court could make a value calculation regarding the plaintiff's continued "use and occupancy" of the defendant's home following the dissolution of the parties' marriage, any error in the court's ruling was harmless, and we need not address further the defendant's arguments in this regard. Accordingly, the defendant's claim fails.

## II

## PLAINTIFF'S CROSS APPEAL

Next, we address the plaintiff's cross appeal, in which she claims that the court improperly concluded that the parties' agreement was valid and enforceable against her. Specifically, the plaintiff asserts that the agreement is unenforceable because it is unconscionable now, as the defendant seeks to enforce it, and when it was originally executed. We are not persuaded.

The following additional facts and procedural history are relevant to the disposition of the plaintiff's cross appeal. The plaintiff initially raised the issue of the agreement's unconscionability in her January 5, 2009 amended reply to the defendant's special defense. The basis for the plaintiff's claim of unconscionability was that, at the time the agreement was executed, "the plaintiff was pregnant with the defendant's second child, within days of delivery, and in a heightened emotional state." Also, the plaintiff maintained that enforcement of the agreement would leave "the plaintiff without any funds whatsoever with which to support herself." In its May 4, 2009 factual findings in support of its financial orders, the court explained that "although the

agreement may not be acceptable to the [plaintiff] at this point in time, [the] court does not find it unconscionable when executed or now when enforcement is sought." Importantly, the court noted that both parties, "particularly the [plaintiff], were afforded a reasonable opportunity to consult with independent counsel" at the time the agreement was executed, such that execution of the agreement constituted each parties' "free act and deed . . . ." The plaintiff now claims that the court improperly concluded that the agreement was enforceable, given its apparent unconscionability.

"Whether enforcement of an agreement would work an injustice is analogous to determining whether enforcement of an agreement would be unconscionable. It is well established that [t]he question of unconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case. . . . Thus, our review on appeal is unlimited by the clearly erroneous [or abuse of discretion] standard. . . . This means that the ultimate determination of whether a transaction is unconscionable is a question of law, not a question of fact, and that the court's determination on that issue is subject to plenary review on appeal." (Internal quotation marks omitted.) *Crews* v. *Crews,* supra, 295 Conn. 163–64.

"When legal conclusions of the trial court are challenged on appeal, we must decide whether [those] . . . conclusions are legally and logically correct and find support in the facts that appear in the record. . . . To render unenforceable an otherwise valid antenuptial agreement, a court must determine: (1) the parties' intent and circumstances when they signed the antenuptial agreement; (2) the circumstances of the parties at the time of the dissolution of the marriage; (3) whether those circumstances are so far beyond the contemplation of the parties at the time of execution; and (4) if

the circumstances are beyond the parties' initial contemplation, whether enforcement would cause an injustice." (Citations omitted; internal quotation marks omitted.) Id., 167–68.

"[In any case] the party seeking to challenge the enforceability of the antenuptial contract bears a heavy burden." Id., 169. "In the absence of a clear indication that the antenuptial agreement is unenforceable because it was not validly entered into, that it violated public policy, or that it would be unjust to enforce the agreement due to a significant and uncontemplated change in the parties' circumstances . . . we are unable to rewrite the terms of the contract to which the parties themselves agreed." (Citation omitted.) Id., 173.

Here, the record clearly supports the court's conclusion that the parties' agreement was validly executed and not unconscionable. Not only were both parties represented by their own counsel in negotiation and execution of the agreement, but there was also a third independent attorney who oversaw "execution of the document [to] make sure [execution] was [each party's] free act and deed and that [each party was] not under any duress at the time of signing." Moreover, although there is a gross disparity in the financial assets of the parties, this disparity existed at the time the agreement was executed. Thus, we cannot say, based on our review of the record, that the "circumstances of the parties at the time of the dissolution of the marriage"; *Crews* v. *Crews*, supra, 295 Conn. 168; were beyond the contemplation of the plaintiff, either when the agreement was executed or when the defendant sought its enforcement in this dissolution action. Although we are mindful of the equitable concerns raised by the plaintiff in support of her unconscionability argument, our consideration of whether the " 'agreement was a good bargain for the plaintiff does not enter into the analysis' " on appeal. Id. In the present case, there is no indication that the

parties' agreement "was not validly entered into, that it violate[s] public policy, or that it would be unjust to enforce the agreement due to a significant and uncontemplated change in the parties' circumstances . . . ." Id., 173. Thus, we conclude that the court properly determined that the parties' agreement was enforceable and, accordingly, the plaintiff's cross appeal fails.

The judgment is reversed only with respect to the court's award of attorney's fees to the plaintiff and the case is remanded with direction to render judgment denying the plaintiff attorney's fees. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.